EDWARD CAWLEY *vs.* WILFRID JEAN.

Middlesex.    December 8, 1913. — June 17, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & DE COURCY, JJ.

*Landlord and Tenant,* Covenants in lease.  *Contract,* In writing, Construction.
*Evidence,* Extrinsic affecting writings.  *Damages,* In contract.  *Words,* "Now,"
"As good."

Where a lease of real estate is dated on the first day of the term that it creates,
and purports to have been executed on that day, but in fact was executed about
five months later after certain changes had been made in the buildings on the
premises, and contains a covenant of the lessee to deliver up the premises at
the end of the term in "as good order and condition . . . as the same now
are," the condition referred to is that at the date of the lease and not that at
the time of its execution, and the plain words of the covenant cannot be varied
by any extrinsic evidence to the contrary.

A covenant by a lessee of real estate to "deliver up the premises to the lessor
. . . at the end of the term, in as good order and condition, reasonable use
and wearing thereof, fire and other unavoidable casualties excepted, as the same
now are," contained in a lease which also contains a stipulation of the lessee
that he will not "make or suffer to be made any alteration therein, but with
the approbation of the lessor thereto, in writing . . . first obtained," does not
require the lessee to restore to its original condition a building which has been
altered during the term with the consent of the lessor, but means that the
building at the expiration of the term shall be returned to the lessor in a state
of repair as good as it was in at the beginning of the term both in regard to the
unchanged portion of it and the parts that have been altered in conformity
with the provisions of the lease.

In an action for a breach by a lessee of real estate of a covenant to return the
premises with their permitted alterations at the end of the term in as good
condition as they were in at the beginning of it, the plaintiff on proving the
breach of covenant is entitled to recover such a sum of money as at the end of
the term would put the premises in the condition in which the tenant was
bound to leave them.

Where on the back of a lease of real estate and personal property, that contained
an agreement of the lessee to purchase the leased property at the end of the
term, there was indorsed an express agreement signed by both the parties
that by reason of damage done to personal property included in the lease by
a fire that occurred after the date of the lease "and to cover all loss sustained
by said [lessee] under the within agreement in consequence of said fire, there
shall be allowed to him upon his completing the terms of the purchase herein
provided for, the sum of $325, from off the purchase price within named," the
lessee, having chosen to limit his remedy for loss by fire to a deduction from the
purchase price, cannot claim, in case he does not make the purchase, any right to
deduct the amount of such loss from the amount due from him as rent under
the lease.

CONTRACT for the alleged breach of certain covenants contained in a lease in writing from the plaintiff to the defendant of a certain building and the machinery and fixtures contained in it, on Church Street in Lowell, used as a steam laundry, the instrument of lease containing also an agreement to purchase the premises at the termination of the lease and being dated October 21, 1901, although it was not executed until March 8, 1902, and having indorsed on its back an agreement of the last named date signed by the plaintiff and the defendant. Writ dated March 6, 1906.

The declaration contained five counts. The third and fourth counts were waived at the trial. The second count was for an alleged breach of a covenant to deliver up the premises at the end of the term in as good order and condition, reasonable use and wearing thereof, fire and unavoidable casualties excepted, as the same were in at the beginning of the term or might be put in by the plaintiff. The first count was for an alleged breach of the covenant to pay rent, and the fifth count was on an account annexed for $103.33, alleged to be due as rent from April 22, 1903, to June 23, 1903.

The instrument of lease and agreement above referred to was as follows:

"This indenture, made the twenty-first day of October in the year of our Lord one thousand nine hundred and one.

"Witnesseth, that Edward Cawley of Lowell County of Middlesex and Commonwealth of Massachusetts do hereby lease, demise, and let unto Wilfrid Jean of said Lowell the following described premises, viz: the land and building thereon situate on the west side of the Concord River in said Lowell, bounded easterly by said river, — westerly by the location of the Lowell and Andover Railroad, and northerly by Church Street, being a triangular lot, together with all fixtures and machinery to said Cawley belonging in said building. And said Jean agrees at the expiration of the term hereinafter limited to buy the aforesaid real and personal property of said Cawley for the entire price of seven thousand dollars, — one thousand dollars of which is to be then paid down in cash upon delivery of deed from said Cawley to him, and the remaining six thousand dollars to be secured by mortgage of said premises providing for annual payments of the principal thereof

in sums of at least $500.00 yearly; — And said Jean hereby is granted the right to make said payment of one thousand dollars, and thereupon become entitled to his said deed of conveyance at any time earlier than the said term of this lease as he may elect. And the said lease thereupon to forthwith terminate. The said Edward Cawley on his part agrees to make and execute to said Jean the deed of conveyance of said property, upon the compliance of said Jean with the foregoing provisions in that regard relating.

"To hold for the term of eighteen months from the 21st day of October nineteen hundred and one yielding and paying therefor the rent of fifty dollars per month.

"And said lessee doth promise to pay the said rent in said instalments of fifty dollars each per month for such time hereafter as may elapse before he shall receive his said deed under the stipulations aforesaid, and to quit and deliver up the premises to the lessor, or his attorney, peaceably and quietly, at the end of the term, in as good order and condition, reasonable use and wearing thereof, fire and other unavoidable casualties excepted, as the same now are, or may be put into by said lessor, and to pay the rent as above stated, during the term, and also the rent as above stated, for such further time as the lessee may hold the same, and not make or suffer any waste thereof; nor lease, nor underlet, nor permit any other person or persons to occupy or improve the same, or make or suffer to be made any alteration therein, but with the approbation of the lessor thereto, in writing, having been first obtained; and that the lessor may enter to view and make improvements, and to expel the lessee, if he shall fail to pay the rent as aforesaid, or make or suffer any strip or waste thereof.

"And provided also, that in case the premises, or any part thereof during said term, be destroyed or damaged by fire or other unavoidable casualty, so that the same shall be thereby rendered unfit for use and habitation, then, and in such case, the rent hereinbefore reserved, or a just and proportional part thereof, according to the nature and extent of the injuries sustained, shall be suspended or abated until the said premises shall have been put in proper condition for use and habitation by the said lessor, or these presents shall thereby be determined and ended at the election of the said lessor or his legal representatives.

"In witness whereof, the said parties have hereunto inter-

changeably set their hands and seals the day and year first above written.

Edward Cawley    [Seal.]

Wilfred Jean

"Signed, sealed and delivered in presence of            [Seal.]

Nathan D. Pratt."

Indorsed on the back of this instrument was the following:

"It is hereby agreed by the within named parties, that by reason of the damage done to the personal property included in the within agreement by fire on January 22nd, 1902, and to cover all loss sustained by said Jean under the within agreement in consequence of said fire, — there shall be allowed to him upon his completing the terms of the purchase herein provided for, — the sum of three hundred and twenty-five ($325.00) dollars, from off the purchase price within named.

"Lowell, March 8th, 1902.

"Witness to both                                Edward Cawley

Nathan D. Pratt.                              Wilfrid Jean."

In the Superior Court the case was referred to Alfred P. Sawyer, Esquire, as auditor, and afterwards was tried before *McLaughlin,* J., upon the auditor's report. The plaintiff did not contend that he was entitled to recover under the third and fourth counts of his declaration, and the defendant admitted that the plaintiff was entitled to recover under the first and fifth counts of his declaration the sum of $138 for rent due, being the sum found by the auditor, but denied the right of the plaintiff to recover any larger sum, and denied the right of the plaintiff to recover under the second count of his declaration.

At the close of the evidence the defendant asked the judge to make the following rulings:

"2. The defendant is not liable on the second count of the plaintiff's declaration."

"5. The defendant is not liable for any alterations or changes in the building or machinery made before the date of the actual execution of the agreement sued upon.

"6. The defendant is not liable for any alterations or changes made with the consent of the plaintiff, express or implied.

"7. If the jury find that the plaintiff knew that the various

changes and alterations in the building and machinery for which the plaintiff claims to be compensated were being made by the defendant at the time they were made and that the plaintiff made no objection thereto, then the plaintiff has waived all claim for such alterations and changes and cannot recover on account thereof.

"8. The measure of damages for alterations and changes made in the building or machinery, under the circumstances of this case, is the lessened value of the premises in consequence thereof, and not the cost of replacing them in the condition in which they were before such changes and alterations were made."

The judge refused to make any of these rulings, and ruled that the plaintiff was entitled to recover, under the second count of his declaration, an amount which would enable him at the expiration of the term to put the premises in the condition they were in upon October 21, 1901, the beginning of the term limited in the lease, and that certain evidence, contained in an agreement between the counsel at the trial, relating to the cost of replacing the building and machinery, was competent, and further ruled that the defendant was not entitled to be credited on the sum due for rent the rental value of the premises during the time they were unfit for use after the fire.

It was agreed by the counsel that, if the rulings of the judge were correct in law, it would be the duty of the jury to return a verdict for the plaintiff on the first and fifth counts of his declaration in the sum of $138 and interest thereon from the date of the writ, and for the plaintiff on the second count of his declaration in the sum of $700 and interest thereon from the date of the writ, and that, subject to the defendant's exceptions to rulings of the judge, the judge should order the jury to return such a verdict; and a verdict accordingly was ordered and returned for the plaintiff in the sum of $262.29 on the first and fifth counts of his declaration and in the sum of $976.53 on the second count of his declaration. The defendant alleged exceptions.

*S. E. Qua,* for the defendant.

*J. J. Devine,* for the plaintiff.

RUGG, C. J. This is an action of contract in which the plaintiff seeks to recover damages for an alleged breach by the defendant of certain covenants contained in a written lease between the

parties, for a term to begin on October 21, 1901, and bearing that date but in fact executed on March 8, 1902.

The first point to be determined is the date to which the words "as the same now are" in that part of the covenant which requires the lessee to deliver up the premises at the end of the term in "as good order and condition . . . as the same now are," refer, that is, whether they refer to the time when they were in fact used on March 8, 1902, after changes and alterations had been made, or refer to the date named in the lease which is also the beginning of the term, October 21, 1901, before the alterations and changes were made. It is familiar law that, when parties have put their contract in writing, all previous or contemporary oral negotiations are merged in the written instrument, which conclusively is presumed to express the bargain made. This is not only a rule of evidence, but is founded upon the substantive rights of the parties. If the terms of the agreement are ambiguous, or the sense of a word employed is obscure, oral evidence is admissible to show all the circumstances attending the transaction in order that the writing may be interpreted in the light of the situation of the parties at the time it was made. But, where there is no uncertainty about the instrument, oral evidence is not admissible. *Butterick Publishing Co.* v. *Fisher,* 203 Mass. 122, 133. *Jennings* v. *Puffer,* 203 Mass. 534. *Rochester Tumbler Works* v. *Mitchell Woodbury Co.* 215 Mass. 194, 197.

Construing the lease in the case at bar according to the terms used, it does not appear to be uncertain or open to doubt. When the date of a lease and the beginning of its term are the same there is no room for construction as to the meaning of words expressing present time. The word "now" as matter of construction must refer to the date of the instrument and the beginning of the lease unless a mistake is apparent on the face of the papers, which is not the case here. "Now" has sometimes been held to mean the beginning of the term, when that is different from the date of the lease. *Holbrook* v. *Chamberlin,* 116 Mass. 155. *White* v. *Nicholson,* 4 Man. & G. 95. *Chesapeake Brewing Co.* v. *Goldberg,* 107 Md. 485. These cases do not control the case at bar, but tend to confirm the conclusion here reached.

A further question turns on the meaning of the words "as good order and condition" in the covenants by the lessee, "To quit and

deliver up the premises to the lessor . . . at the end of the term, in as good order and condition, reasonable use and wearing thereof, fire and other unavoidable casualties excepted, as the same now are." These words in leases have acquired no inflexible significance. They have not become words of property with a fixed and technical definition. They are to be interpreted as words used in written instruments commonly are interpreted in accordance with general usage and understanding. They seem to be reasonably plain. They impose on the lessee the obligation to make whatever repairs may be necessary in order that at the end of the term the estate may conform to the standard at the time fixed in the lease. *Jaques* v. *Gould,* 4 Cush. 384, 388. The covenant, however, is only to deliver the premises in "as good order and condition as" at the beginning of the lease. This involves a comparison with the standard established by the lease. It does not require that they be delivered in "the same shape and condition" as in *Reed* v. *Harrison,* 196 Penn. St. 337, nor in a "like condition" as in *Murray* v. *Moross,* 27 Mich. 203, nor in the "same state" as in *White* v. *Nicholson,* 4 Man. & G. 95. The signification of the difference between these and such like phrases substantially prohibiting any change in the condition of the premises, and the words in the present covenant, may be measured by reference to the further stipulation by the lessee that he will not "make or suffer to be made any alteration therein, but with the approbation of the lessor thereto, in writing . . . first obtained." This clause indicates a purpose in the minds of the parties that if both agree the lessee may make alterations. "Alteration" as applied to a building usually denotes a change or substitution in a substantial particular. *Commonwealth* v. *Hayden,* 211 Mass. 296. The repair and alteration clauses construed together manifest an intent that the building at the expiration of the term shall be returned to the lessor in a state of repair as good as it was in at the beginning as to both its original construction and also such changed state as it may be transformed into in accordance with the express terms of the lease. But it does not mean that alterations so made must be eliminated and the initial condition restored. If that had been in the minds of the parties, words indicating identity with the former condition and not comparative excellence would have been employed. *Marks* v. *Chapman,* 135 Iowa, 320,

323. See *Perry* v. *J. L. Mott Iron Works*, 207 Mass. 501; *Pfister & Vogel Co.* v. *Fitzpatrick Shoe Co.* 197 Mass. 277.

There is nothing in *Watriss* v. *First National Bank of Cambridge*, 124 Mass. 571, 576, inconsistent with this view. Although the same words occurred in the covenant in the lease under consideration in that case as in the one at bar, no such issue was involved as is presented here and the description of the covenant at page 576 as being one to deliver up the premises "in the same condition" was by way of reference and not of analysis or definition. A chance phrase used for one purpose in illustration or in the course of a chain of reasoning cannot be wrested out of its context and seized upon as stating a fundamental proposition of general application. See *Quinn* v. *Leathem*, [1901] A.C. 495, 506.

The defendant made alterations in the building and changes in the position and arrangement of machinery. It was found by the auditor that these were made with the knowledge and consent of the plaintiff who waived the provision of the lease that no alterations should be made but with his approbation first obtained in writing. Under these circumstances the lease does not require of the lessee a restoration to the original condition.

The plaintiff had a right to demand under this covenant in the lease that the tenant leave the premises, as they have been altered during the term with his knowledge and consent, in as good order and condition (with the exceptions stated) as they were in at the beginning of the term. This is the extent of his right. He cannot require that they be restored to their original condition so far as they have been altered or changed with his consent during the term. The defendant's requests for rulings numbered 6 and 7 should have been given in substance. As this was not the rule of law adopted at the trial, the exceptions upon this point must be sustained.

If it should be found that there was a breach of the covenant as thus construed, the measure of damages would be such a sum of money as at the end of the term would put the premises in the condition in which the tenant was bound to leave them. *Watriss* v. *First National Bank of Cambridge*, 130 Mass. 343. *Appleton* v. *Marx*, 191 N. Y. 81, 87.

The defendant is not entitled to the deduction of $50 from the amount of rent due under the first and fifth counts of the declara-

tion, being the proportional part of the rental for the period during which the premises were unfit for use by reason of the fire. The parties settled this matter by agreement indorsed upon the lease, whereby a concession was to be allowed to the tenant upon completing the terms of the purchase, which concession included "all loss sustained by said Jean under the within agreement in consequence of said fire." These are comprehensive words and cover all the damage sustained by the tenant in this respect. If he was willing to make an agreement which plainly limited his right in this respect to an allowance upon the purchase price, he cannot now seek to have it changed because the purchase has not been made. *Gaston* v. *Gordon,* 208 Mass. 265.

*Exceptions sustained.*