CRYSTAL CONCRETE CORPORATION *vs.* TOWN OF BRAINTREE.

Norfolk.    May 14, 1941. — July 8, 1941.

Present: FIELD, C.J., DONAHUE, DOLAN, & RONAN, JJ.

*Landlord and Tenant*, Construction of lease, Delivery of premises at end of term. *Damages*, For breach of contract, For tort. *Equity Pleading and Practice*, Appeal. *Words*, "Or."

Upon findings by a master respecting a lease of land to a town for the purpose of removing materials for highway construction, "all to a depth and grade line" two feet above high water mark of a certain pond, with an *habendum* clause giving the town a right to excavate "and otherwise to operate in and about the demised premises, and to leave the surface at not less than a 2% grade or 2 feet above the high water mark of" the pond "excepting those parts . . . now below said grade," the proper interpretation of the lease was that the limit below which the materials could not be removed was a plane beginning at two feet above high water at the edge of the pond and inclining thence upward at a two per cent grade.

A plaintiff, appealing only from the final decree in a suit in equity, was entitled to contend that it was unwarranted by facts found by a master, although he had not appealed from an interlocutory decree confirming reports by the master.

A purchaser of land subject to a lease given to a town for the purpose of removing materials for highway construction was entitled to recover from the town the entire damage to the reversion caused by its breach of the lease through excessive removals of materials both before and after he acquired title.

In the circumstances, a conclusion was proper that the market value of sand and gravel, improperly removed by a lessee from a parcel of land having no other commercial value than that of such materials therein, fairly represented the diminution of the market value of the premises and was the proper amount of damages to be awarded the owner of the reversion at the end of the term.

BILL IN EQUITY, by amendment from an action at law begun in the Superior Court by writ dated May 19, 1938.

The master, besides the findings described in the opinion, found, on his interpretation of the lease described in the opinion, "that the defendant during its occupation of the demised premises excavated in violation of this provision of the lease approximately 32,573 cubic yards. I further find . . . the fair market value of this material in the bank to be fifteen cents per cubic yard and that the plaintiff has been damaged by the acts of the defendant on this item in the sum of $4,885.95."

In a supplemental report, filed after recommittal, he found that of the foregoing quantity, "7,008 cubic yards were removed prior to January 25, 1933, the date on which the plaintiff acquired title," and that, on that basis, "the defendant has wrongfully removed 25,565 cubic yards, and on the unit basis of fifteen cents per cubic yard . . . the plaintiff has sustained damage by the acts of the defendant on this item in the sum of $3,834.75."

The master also found that the defendant did no further work on the leased premises after May 6, 1936, and abandoned them shortly thereafter.

In his supplemental report, the master found "that to refill the excavated area to the grade and level as determined under my finding and ruling as to the correct interpretation of the lease, 30,678 cubic yards of material are

required, . . . [that] the cost of material of the same quality as that excavated by the defendant from the seven-acre area . . . [was] fifteen cents per cubic yard, that the cost of delivery on the seven-acre parcel is fifteen cents per cubic yard per mile of transportation and the cost of grading to rough grade an additional five cents per cubic yard"; and that, if "the plaintiff is entitled to damages based upon the cost of refilling with material of the same quality as that previously excavated by the defendant, then the amount of such damage, computed on the cost of the necessary amount of material, plus transportation and grading cost, is to be substituted for my finding of damages in the sum of $3,834.75"; but that, if, on the other hand, "the plaintiff is entitled to have that portion of the seven-acre parcel wrongfully excavated refilled, but not with material of any specific quality or kind, . . . there is sufficient material for that purpose in the unexcavated four acres on the west side of the property, and . . . the cost of refilling and grading with this material is nineteen cents per cubic yard, the material itself costing nothing and having no commercial value, and that the cost of the operation is to be added to the plaintiff's damages of $3,834.75."

The case was heard by *Morton, J.*, by whose order there were entered an interlocutory decree confirming both the report and the supplemental report, and a final decree "that the plaintiff is entitled to recover of" the defendant "the sum of one dollar as nominal damages for waste to the premises described in the bill suffered or permitted by the" defendant; and "the further sum of . . . $4,918.01 as damages, including interest, suffered by the plaintiff by reason of the conversion by the" defendant "of 25,565 cubic yards of gravel, the property of the plaintiff." Both parties appealed from the final decree only.

*R. A. Hunt*, for the defendant.

*R. B. Heavens*, for the plaintiff.

RONAN, J.   The Crystal Sand & Gravel Co. leased to the defendant town on May 16, 1932, for the term of five years, a seven-acre lot of land in the vicinity of Ames Pond in said town, for the purpose of permitting the town to exca-

vate and remove sand, gravel and other materials for highway construction. An individual who held two mortgages upon the leased premises assented to the lease and waived all rights of priority to the lease. The town took possession of the premises soon after the execution of the lease and was engaged in the excavation and removal of the said road building materials when, on January 25, 1933, the plaintiff acquired title through the foreclosure of a mortgage and has since continued as owner of the premises. Excavating operations were conducted by the town principally upon three acres of the demised premises — the other four acres did not contain material suitable for the purposes of the town — until May, 1936, when excavating ceased. Thereafter the plaintiff brought an action at law for conversion and trespass, which was changed to a suit in equity in which the bill, as amended, alleges that the town had wrongfully excavated and removed a large quantity of sand and gravel below the grade prescribed by the lease, and had left the premises without smoothing off the surface where the excavating had been performed. The suit was referred to a master whose reports have been confirmed, and a final decree was entered ordering the town to pay nominal damages in the sum of $1 for waste, and a further sum with interest, representing the value of the material that it had wrongfully removed since the plaintiff had become the owner of the demised premises. Both parties appealed from the final decree.

The defendant raises no question but that it is bound by the terms of the lease. *Winnisimmet Trust, Inc.* v. *Libby,* 247 Mass. 560. *Gorin* v. *Stroum,* 288 Mass. 6. It sought in its answer to have the lease reformed upon the ground of mutual mistake, but the master found against the town on that issue and no question on that phase of the case has since been raised. The town does not contend that it is not liable for the value of the material that it removed below the grade designated by the lease, since the plaintiff became the owner of the land, or that the quantities or value of the excavated material appearing in the alternative findings of the master, based upon the location of the

grade at the two-foot level above the high water mark and upon the two per cent level, is not correct. The town's sole contention is that it is liable only for the value of materials removed since January 25, 1933, below a horizontal grade two feet above the high water mark of the pond. The plaintiff's sole contention is that upon the facts found by the master it was entitled to more damages than allowed it by the final decree.

The first question for decision is the determination of the grade or level below which the town was not permitted to excavate. The town contends that it could remove all materials that were above a level plane which was two feet above the high water mark of Ames Pond, while the plaintiff contends that the limit below which the materials could not be removed was a plane the edge of which near the pond was two feet above the high water mark, and that this plane then inclined upward at a two per cent grade as it extended away from the pond. The master found, on all the evidence, that the lease fixed the limits for excavating in accordance with the plaintiff's contention.

After describing the demised premises by metes and bounds, the lease continued as follows: "all to a depth and grade line three feet above high water mark of Ames Pond." The *habendum* clause, in so far as material, provided that the town should have the right to excavate "and otherwise to operate in and about the demised premises, and to leave the surface at not less than a 2% grade or 2 feet above the high water mark of Ames Pond, excepting those parts of the demised property now below said grade." At the hearing before the master, the parties agreed that the word "two" should be substituted for the word "three" in the above quoted phrase "three feet above high water mark of Ames Pond." There was evidence that, in the negotiations for the lease, the lessor desired to limit the excavation to a level three feet above the high water mark of the pond while the town wanted this level fixed at two feet, and that a compromise was reached in which it was agreed that excavating should be limited to a two per cent grade, beginning at the two-foot

level and sloping upward and away from the pond. There was other evidence that the town agreed that, when it turned over possession of the premises at the termination of the lease, it would leave a smooth surface at the site of the excavation which would slope upward at a two per cent grade from the pond. There was testimony that such a grade was necessary to protect the demised premises from an overflow from the pond. The only purpose in fixing a level for excavating was to prevent the land from being inundated by the pond. It was natural that the lowest level should be near the pond and that it should slope upward as it extended away from the pond. The town, which was not required to do any excavating and which in fact excavated almost entirely in three acres of this seven-acre lot, did not have the choice of removing material to a depth below the two-foot level provided it left a smooth surface with a two per cent grade over the site where it had excavated. Such a construction would render the two-foot level meaningless. Likewise, it could not excavate to this two-foot level and leave the surface horizontal. To permit it to do so would be to ignore the provision requiring a surface with a two per cent grade. The lease is to be considered as a unit; all the words employed by the parties in expressing the terms and conditions of the transaction upon which they had entered must be given their appropriate meaning, and its various clauses are, if reasonably possible, to be so construed as to give force and effect to each of them. Effect must be given to the intent of the parties as shown by the words they used, interpreted in the light of the facts to which they apply and the circumstances that attended their use. *Ball* v. *Wyeth*, 8 Allen, 275. *Weeks* v. *Wilhelm-Dexter Co.* 220 Mass. 589. *Perry* v. *Wilson Bros. Inc.* 260 Mass. 519. *Ginsburg* v. *Jacobson*, 276 Mass. 108. *Codman* v. *Hygrade Food Products Corp.* 295 Mass. 195. *Malden Knitting Mills* v. *United States Rubber Co.* 301 Mass. 229. The level mentioned in the descriptive clause must be construed with the additional provision contained in the *habendum* clause requiring a smooth surface with a two per cent grade. The first clause

established a base line upon which a grade line was super-imposed by the second clause. This is clearly shown in that portion of the *habendum* clause that frees the lessee from surfacing those areas of the demised premises "now below said grade." The town was not required to grade where it was not authorized to excavate. An area that was above the two-foot level but below the two per cent grade could not be excavated to the said level. The same interpretation could be reached by construing the particle "or" as conjunctive in the clause requiring the surface to be left "at not less than a 2% grade or 2 feet above the high water mark." This word has been frequently so construed in statutes and written instruments when such meaning is consonant with the intent of the Legislature and of the parties in employing the term. The cases are collected in *Gaynor's Case*, 217 Mass. 86, and *Central Trust Co.* v. *Howard*, 275 Mass. 153.

The second question in issue is whether the judge adopted the correct measure of damages in ordering the town to pay the market value of the material that it had wrongfully removed from the premises since the plaintiff became the owner. The town concedes that the award is correct if, as we have just decided, it could not remove material below the two per cent grade line. The plaintiff, however, contends that it is entitled to recover not only the fair market value of all such material during the term of the lease but also the reasonable cost, as found by the master, of restoring the premises to the condition in which they should have been left by the town.

It is open to the plaintiff, although it did not appeal from the interlocutory decree confirming the master's reports, to contend that upon the facts found by the master the final decree was unwarranted. *Fay* v. *Corbett*, 233 Mass. 403. *Arey* v. *George Associates, Inc.* 299 Mass. 130.

The plaintiff is seeking not specific performance but damages. It is entitled to be put in the same position that it would be in if the town had performed the terms of the lease. It cannot recover for a conversion of the materials and at the same time recover the value of new filling to

take the place of that removed, together with the incidental expense incurred in surfacing the site of the excavation. *Mount Pleasant Stable Co.* v. *Steinberg,* 238 Mass. 567. *Irwin* v. *Worcester Paper Box Co.* 246 Mass. 453. *Scott* v. *Haverstraw Clay & Brick Co.* 135 N. Y. 141.

The breach of the lease occurred when the plaintiff was the owner of the premises and when the town failed to deliver up the premises to the plaintiff in the condition required by the lease. The owner of the reversion was entitled to recover the entire damage caused by this breach. *Hill* v. *Hayes,* 199 Mass. 411. *Cawley* v. *Jean,* 218 Mass. 263. *Massachusetts Home Missionary Society* v. *Sirianni,* 252 Mass. 352.

A lessee who breaches a provision of the lease requiring him to make certain repairs or to deliver up the premises at the termination of the lease in a certain condition is liable in damages for the reasonable cost of making such repairs or of putting the premises in the condition prescribed by the lease. *Watriss* v. *First National Bank of Cambridge,* 130 Mass. 343. *Cawley* v. *Jean,* 218 Mass. 263. *Weeks* v. *Wilhelm–Dexter Co.* 220 Mass. 589. *Mackintosh* v. *Cioppa,* 245 Mass. 152. *Kronberg* v. *Bulle,* 247 Mass. 325. *Ginsburg* v. *Jacobson,* 276 Mass. 108. *Codman* v. *Hygrade Food Products Corp.* 295 Mass. 195. *Scott* v. *Haverstraw Clay & Brick Co.* 135 N. Y. 141. *Appleton* v. *Marx,* 191 N. Y. 81. But the plaintiff is not to be put in a better position than it would have been if the defendant had performed the terms of the lease. The location and character of the demised premises must be considered; and the reasonable cost of repairs, in some instances, would furnish the proper measure of damages while, in other instances, the value of the premises may be such that the incurrence of expense for repairs would not be a reasonable, practical or economical method of dealing with the property. Such expense might greatly exceed any diminution of the fair market value of the land that was caused by the defendant's nonperformance of the provisions of the lease. The master, after describing the demised premises in some detail, found that this entire seven-acre lot had no commercial value ex-

cept for the sand and gravel which it contained; that the material located upon four acres of this lot had little, if any, value, being composed of "dead" sand and rocks; and that this area was saturated with water to such an extent that it would be unprofitable to do any excavating work in this locus. The defendant during its occupancy of the premises had excavated thirty-two thousand five hundred seventy-three cubic yards of material, of the fair market value of $4,885.95, below the level designated in the lease. The master found that this was also the damage to the reversion which the owner of the land had sustained on account of the removal of this material. The diminution in the fair market value of the premises that resulted from the defendant's conduct was the proper measure of damages. The cost of repairs would be competent evidence of this difference in value, but the location and physical characteristics of the premises as set forth by the master would not warrant charging the defendant with several thousand dollars in excess of this difference in refilling and grading the three acres where excavating had been performed. In these circumstances, we think that the plaintiff is entitled to recover the damage to its land in the amount found by the master. *Gilmore* v. *Driscoll*, 122 Mass. 199. *Adams* v. *Marshall*, 138 Mass. 228. *Childs* v. *O'Leary*, 174 Mass. 111. *Hopkins* v. *American Pneumatic Service Co.* 194 Mass. 582. *Salem* v. *Salem Gas Light Co.* 241 Mass. 438.

The decree must be reversed and a new decree entered ordering the defendant to pay the plaintiff $4,885.95 with interest from the date of the writ, together with costs.

*Ordered accordingly.*