JAMES B. LAURIN & another *vs.* DECAROLIS CONSTRUCTION COMPANY, INC.

Middlesex.     April 7, 1977. — June 6, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & ABRAMS, JJ.

*Contract,* Sale of real estate. *Real Property,* Removal of material. *Damages,* Removal of material from real property.

Where the vendors of property, without the consent of the purchasers, removed trees and gravel from the land after a purchase and sale agreement had been executed, the purchasers had a claim for breach of contract. [690-691]

Where the vendors of property breached a contract for purchase and sale of the land by removing gravel from the property without the purchasers' consent, the purchasers were entitled to the value of the gravel as it lay in the land. [691-693]

BILL IN EQUITY filed in the Superior Court on June 15, 1972.

The suit was heard by *Mitchell,* J., on a master's report.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*John D. Hodges, Jr.,* for the defendant.

*Charles F. Foster* (*Jeremiah F. Murphy* with him) for the plaintiffs.

BRAUCHER, J.   After the execution of a purchase and sale agreement and before the conveyance of the real estate, the vendor removed loam, gravel, trees and shrubs. The purchasers sought and were awarded damages in-

cluding the fair market value of the gravel, and we hold
that such an award is proper in an action for breach of
contract. But the value of the gravel should not have
included the value of the defendant's efforts in removing
the gravel and loading it on trucks. We therefore remand
the case for redetermination of the amount of damages.

The plaintiffs purchased a parcel of real estate and a
single family dwelling from the defendant. The purchase
and sale agreement was executed on March 8, 1971, and
the deed was delivered on September 21, 1971. The plain-
tiffs sued for specific performance and damages, the case
was referred to a master, the master's report was adopted,
and judgment was entered that the plaintiffs recover
$6,480 damages, plus interest.

The defendant appealed, and the Appeals Court re-
versed the judgment and remanded the case to the Su-
perior Court for a redetermination of the damages. 4
Mass. App. Ct. 869 (1976): "As the plaintiffs were not
in or entitled to possession of the premises during the
period when the gravel was removed therefrom by the
defendant, they are not entitled to the value of the gravel
removed on the theory of conversion which was employed
by the master in determining damages. [Citations omit-
ted]. The plaintiffs are entitled (as alleged and prayed for
in their bill) to the diminution in the value of the land
which was caused by the defendant's stripping and appro-
priation of such of the trees, gravel and loam as did not
have to be removed in order to construct the house and
its septic system. [Citations omitted.]" We allowed the
plaintiffs' application for further appellate review. The sole
issue argued to us is the appropriate measure of damages.

We summarize the master's findings of fact. The plain-
tiffs first viewed the property about March 1, 1971, and
found a well-wooded lot with a building under construc-
tion. About April 11, 1971, after the execution of the
purchase and sale agreement, one of the plaintiffs found
that many trees had been uprooted and toppled on one
side of the house, and he ordered the president of the
defendant company to desist. The defendant continued

to bulldoze the trees on the premises and removed the majority of standing trees. From May 2 to July 30, 1971, the defendant removed about 3,600 cubic yards of gravel from the property in 360 truckloads with an average fair market value of $18, for a total of $6,480. The removal of standing trees, gravel and loam was expressly disapproved by the plaintiffs except as necessitated during the construction of the house and septic system. The purchase price of $26,900 was paid when title passed on September 21, 1971, and did not reflect the diminution in value as a result of the conversion of gravel, loam and trees.

1. *The nature of the claim.* The master concluded that the plaintiffs were the "equitable owners" of the property after the signing of the purchase and sale agreement on March 8, 1971, and that the defendant "unlawfully converted" the gravel, loam and trees "for its own enrichment and use." The defendant argues, as the Appeals Court held, that the master measured damages on a theory of "conversion," and that a person who does not have possession or a right to immediate possession of converted property has no right of action for conversion.

There is some support in our cases for that argument, but those cases seem to be influenced by the form of the action more than by the substantive rights of the parties. See, e.g., *Greve* v. *Wood-Harmon Co.,* 173 Mass. 45, 47 (1899). In a proper form of action, it seems to have been sufficient that the plaintiff had a property interest in the converted property, whether or not he had a possessory right. *Gooding* v. *Shea,* 103 Mass. 360, 362-363 (1869) (action by third mortgagee). We are now largely emancipated from the forms of action, and we are not bound by precedents as to the scope of trespass quare clausum fregit or of trover. We should uphold tort recovery if it would have been proper in an action of trespass on the case or in a suit in equity.

In many States the purchaser is treated as the equitable owner of real estate from the date of the purchase and sale agreement; the rents and profits belong to him and the losses fall on him. See *Beal* v. *Attleborough Sav. Bank,*

248 Mass. 342, 344 (1924), and cases cited; 3 American Law of Property §§ 11.22, 11.30 (A.J. Casner ed. 1952). In such States the vendor is responsible to the purchaser for injury if he commits waste. *Worrall* v. *Munn,* 53 N.Y. 185, 190-191 (1873). Cf. *Walker* v. *Dibble,* 241 Ark. 692, 696 (1966). See 3 American Law of Property § 11.32 (A.J. Casner ed. 1952); 5 R. Powell, Real Property par. 649 (P. Rohan ed. 1976).

We have taken a different view. When a purchase and sale agreement has been executed, the vendor holds the legal title to the property "subject to an equitable obligation to convey" it to the purchaser "on payment of the purchase money." *Barrell* v. *Britton,* 244 Mass. 273, 278-279 (1923). *Kares* v. *Covell,* 180 Mass. 206, 209 (1902). Until the deed is delivered the vendor bears all the risks of ownership should the property be destroyed. *Libman* v. *Levenson,* 236 Mass. 221, 222-224 (1920), and cases cited. He also has the exclusive right to possession of the property and the right to rents and profits. *Beal* v. *Attleborough Sav. Bank,* 248 Mass. 342, 345 (1924). Thus the rights of the purchaser are contract rights rather than rights of ownership of real property.

Here the purchasers saw a well-wooded lot. Their agreement provides that "walks, and hardy shrubs attached to or used with the property are included in this sale." They did not consent to the destruction of the trees, and the excavation removal of the standing trees, gravel and loam was done with their express disapproval except as necessary to construction. It is not now disputed that there was a breach of duty by the vendor. We think the case must be decided, not as a tort action for injury to or conversion of property, but as a claim for a deliberate and wilful breach of contract.

2. *Damages.* The basic principle of contract damages is that the aggrieved party should be put in as good a position as if the other party had fully performed. See 5 A. Corbin, Contracts § 992 (1964). Cf. G. L. c. 106, § 1-106 (1). The plaintiffs do not claim that they are entitled to recover the cost of restoring the premises to

the condition they should have been in. Cf. *Crystal Concrete Corp.* v. *Braintree*, 309 Mass. 463, 469-471 (1941) (breach by lessee); *Cavanagh* v. *Durgin*, 156 Mass. 466, 470 (1892) (trespass); *Groves* v. *John Wunder Co.*, 205 Minn. 163, 170-171 (1939) (grading contract); *Jacob & Youngs, Inc.* v. *Kent*, 230 N.Y. 239, 242-245 (1921) (construction contract). Nor do they claim a right to the net proceeds of wrongful sales of gravel made by the defendant, since no such claim was made. See *Arizona Commercial Mining Co.* v. *Iron Cap Copper Co.*, 236 Mass. 185, 190 (1920) (conversion of gravel). Cf. *Timko* v. *Useful Homes Corp.*, 114 N.J. Eq. 433, 434 (1933) (land contract). See *Rock-Ola Mfg. Corp.* v. *Music & Television Corp.*, 339 Mass. 416, 423-425 (1959) (bailment).

In similar factual situations involving a tortious conversion of property, we have held that the diminution in the value of the premises is a proper measure of damages; alternatively, at the owner's election, we have upheld the award of the fair market value of the material removed by the defendant. *Lawrence* v. *O'Neill*, 317 Mass. 393, 396-397 (1944) (cutting of trees), and cases cited. *Gallagher* v. *R.E. Cunniff, Inc.*, 314 Mass. 7, 9-10 (1943) (conversion of gravel), and cases cited. In *Crystal Concrete Corp.* v. *Braintree*, 309 Mass. 463, 471 (1941), we upheld a like award in a suit in equity for breach of the terms of a lease. In eminent domain cases, however, where the owner of the land sought to prove the value of sand and gravel in place as an element of the value of the land taken, we have held that the evidence could be excluded in the judge's discretion as confusing and speculative. *Consolini* v. *Commonwealth*, 346 Mass. 501, 502 (1963), and cases cited. Cf. *H.E. Fletcher Co.* v. *Commonwealth*, 350 Mass. 316, 323-324 (1966) (granite).

Here the gravel was actually removed, and proof of its value is not confusing or speculative. Particularly where the defendant's breach is deliberate and wilful, we think damages limited to diminution in value of the premises may sometimes be seriously inadequate. "Cutting a few trees on a timber tract, or taking a few hundred tons of

coal from a mine, might not diminish the market value of the tract, or of the mine, and yet the value of the wood or coal, severed from the soil, might be considerable. The wrongdoer would, in the cases instanced, be held to pay the value of the wood and coal, and he could not shield himself by showing that the property from which it was taken was, as a whole, worth as much as it was before." *Worrall* v. *Munn*, 53 N.Y. 185, 190 (1873). This reasoning does not depend for its soundness on the holding of a property interest, as distinguished from a contractual interest, by the plaintiffs. Nor is it punitive; it merely deprives the defendant of a profit wrongfully made, a profit which the plaintiff was entitled to make.

Whatever the rule in a tort action, however, we think that the measure of damages in a contract action should not include the value added by defendant's labor in severing the gravel and loading it on trucks. In *Gilmore* v. *Wilbur*, 12 Pick. 120, 122 (1831), the defendants wrongfully cut the plaintiffs' wood, converted it into charcoal, and sold it, and the plaintiffs were apparently allowed to recover the proceeds without deduction for the wrongdoers' expenses; but the point was not considered by the full court. In *Handforth* v. *Maynard*, 154 Mass. 414, 417 (1891), damages for the destruction of ice on a pond were measured by the market "value of the ice harvested and deposited upon the shore of the pond, less the expense of so harvesting and depositing it." In *Rockwood* v. *Robinson*, 159 Mass. 406, 407 (1893), the court approved recovery of damages for removal of gravel, sand and other materials measured by "the price commonly paid for such materials, as they lie in the land." Cf. *Crystal Concrete Corp.* v. *Braintree, supra* at 464 (value of gravel "in the bank").

Since the master determined the value of the gravel loaded on trucks rather than its value as it lay in the land, we remand the case to the Superior Court for determination of damages consistent with this opinion.

*So ordered.*