Brady, J.
The plaintiff David Crispo, Trustee of the Crispo Family Trust, seeks specific performance of a purchase and sale agreement regarding a 26 square foot triangular piece of land at 23 George Street, Reading, Massachusetts (the parcel). The case was tried before me jury waived on February 26 and 27, 2003.1 find and rule as follows.
1. Plaintiff is the trustee of the Crispo Family Trust. He lives at 26 George Street, Reading, adjacent to a small triangular parcel of land which is the subject of this action. Plaintiff and others in the neighborhood became interested in 1999 in acquiring that small parcel because they perceived that it was integral to a proposed housing development in the area which they wished to prevent. On their behalf, the law firm of Latham, Latham and Lamond (The Latham Firm) obtained information that defendant Charles W. Bowman was paying the taxes on the parcel and may have owned it. Christopher Latham, then a law student and paralegal in the Latham Firm, was directed to contact Mr. Bowman to determine if he might be interested in selling the parcel.
2. In March 1999, Christopher Latham reached Bowman by telephone and the two discussed the parcel. In the course of the conversation, Bowman mentioned that he had received correspondence from another attorney concerning the parcel, and wondered whether development was going on near the parcel. He said that he might consider selling the land. As a follow up to this telephone conversation, on April 15, 1999, Bradley Latham, Christopher Latham’s father and an attorney with the Latham Firm, wrote to Mr. Bowman explaining that “a person proposed to build townhouses in the neighborhood but the Town soundly rejected that proposal.” (Exhibit 7.)
3. There were several additional telephone discussions between Christopher Latham and Bowman. A pattern developed whereby Latham would place several telephone calls to Bowman before he would be able to reach him. Mr. Bowman was a framer, often on the road, and was very hard to reach. Eventually in these telephone conversations they reached a meeting of the minds whereby Bowman would sell the property to the Latham firm’s clients for $3,500. On August 18, *63 1999, Bowman came to the Latham office. Christopher Latham presented him with a one-page purchase and sale agreement. (Exhibit 1.) Bowman, who had bought and sold houses previously, was generally familiar with real estate transactions. He carefully read the agreement, and signed it. Christopher Latham was careful to explain to Mr. Bowman that he was a paralegal, not an attorney.
4. The purchase and sale agreement provided for a purchase price of $3,500.00, with $350.00 to be paid as a deposit. Christopher Latham paid the $350.00 by check to Mr. Bowman, who cashed the check the next day. The closing was set on the 60th day after the date of the agreement, and it was stipulated that time was of the essence.
Paragraph 8, ‘Title,” provided as follows:
Seller represents that he holds title to the premises. The Premises were initially owned by John A. Mathieson (John), the step-father of the Seller. Title has since devolved to the Seller. It will be necessary to open probates to evidence the transfer of ownership as described above and to vest record title in the Seller. The Seller will cooperate diligently in that regard and will sign necessary documentation to accomplish the transfer of ownership to the Seller (sic) prior to the closing and to evidence such transfer in forms and substance satisfactory to the Massachusetts Land Court. The closing date may be extended by the Buyer for whatever time is required to complete such probates.
BUYER agrees to pay up to $1,500.00 (one thousand five hundred dollars) in reasonable attorneys fees incurred by SELLER in the course of filing the above referenced probates.
5. The reason for paragraph 8 was that defendant made it clear that he would have to probate his mother’s and step-father’s wills so that he could obtain clear title and convey it. He also made it clear that he did not want to spend any money in this effort, and asked Christopher Latham whether the Latham firm could handle the probate proceedings. Christopher Latham responded that that would likely create a conflict of interest, but that he could recommend an attorney to handle the probate for Bowman. Mr. Bowman was concerned about how quickly he would receive payment for the land, and Christopher Latham responded that that depended on how quickly he moved to handle the necessary probate.
6. Christopher Latham then came up with the name of an attorney, Brian Sullivan, who practiced in Chelmsford, Mass., near the New Hampshire border where the defendant lived. Defendant then resided at 103 Barrett Hill Road, Mason, New Hampshire. Bowman brought with him to the August 18, 1999 meeting the wills of his mother and step-father, and their death certificates. A secretary in the Latham office then faxed these documents with a cover letter to Attorney Sullivan indicating that “Mr Bowman stated he’d be contacting you in the near future.” (Exhibit 2.)
7. Shortly after the August 18th meeting Bowman contacted Attorney Sullivan’s office and arranged a meeting. The defendant, however, cancelled the meeting due to a storm on the day in question. He never rescheduled it.
8. The sixly-day closing deadline came and went without any further action by either parly. Eventually, in February 2000, Christopher Latham and defendant did speak a few times by telephone. In one of these conversations Bowman appeared to be annoyed, stating that he felt he was being “ripped off’ because the defendant James T. Lynch and his attorney had told him he could get more money for the parcel. Christopher Latham responded that $3,500.00 was a good price for a small parcel, and asked what Mr. Bowman had done about the probate proceedings. The defendant responded “Nothing.” Christopher Latham said that his clients were “ready to go” as soon as the probate was done. In the course of the conversation the defendant agreed that he was “not out of the agreement” with plaintiff. The defendant did not repudiate the agreement, assert that it had expired or lapsed, or indicate that he had entered into a new agreement with Lynch or any other purchaser. Nor did he ever return, or offer to return, the $350.00 deposit which Christopher Latham had provided.
9. At some date prior to March 1, 2000, Attorney Steven Cicatelli contacted Bowman regarding the possibility of his client, defendant James T. Lynch, purchasing the parcel. Bowman made an appointment to see Cicatelli in his office on March 1, 2000. I cannot determine precisely what was said at this meeting. Mr. Bowman, whom I did not find to be a credible witness, testified that he told Cicatelli that he had had an agreement to sell the parcel to another, but that it had lapsed. Although I suspect something more was said in that meeting about the prior agreement than the evidence reflected, I do not have sufficient evidence upon which to conclude that Cicatelli or his client, Lynch, actually knew that Bowman was then under an obligation to convey the property to Crispo. In any event, Bowman at the March 18, 2000 meeting signed a purchase and sale agreement with James T. Lynch, Trustee of L.A.B. Realty Trust, to sell him the parcel. (Exhibit 4.)
10. On April 6, 2000 Attorney Cicatelli made a presentation to the Reading Zoning Board of Appeals in support of Mr. Lynch’s proposed development that included a representation that his client had a binding purchase and sale with Bowman, and that a prior agreement between Bowman and Crispo had expired. Attorney John T. Lamond of the Latham Firm, upon learning of these representations, wrote to Bowman demanding that he complete the probate tasks undertaken in the August 18, 1999 agreement, revoke the purchase and sale with Lynch, and contact him *64 (Lamond) about a closing date on the August 18, 1999 agreement. (Exhibit 6.) Lamond’s demands were not met, and he filed this lawsuit on August 30, 2000. A lis pendens was filed in the Registry of Deeds concerning this lawsuit on September 1, 2000.
11. Notwithstanding the lawsuit, Bowman and Lynch closed on the parcel on September 8, 2000, and the deed was recorded on September 20, 2000.
12. The complaint is in two counts. Count I seeks specific performance against Bowman. Count II asserts a common-law claim for money damages against Lynch for tortious interference with advantageous contractual relations. Summary judgment was granted to Lynch on Count II.
DISCUSSION
I begin the analysis with the status of the August 18, 1999 agreement (exhibit 1) once the closing date (60 days after August 18) had passed. Had the agreement, as defendant Bowman contends, expired? Generally, closing on the date specified in the purchase and sale agreement is not essential, unless the parties have made it so. See Limpus vs. Armstrong, 3 Mass.App.Ct. 19, 21 (1975); American Oil Co. vs. Katsikas, 1 Mass.App.Ct. 437, 439 (1973). Here the agreement contained a “time is of the essence" provision; but it is evident from the agreement itself and the attendant circumstances that the parties did not know how long probate might take. For that reason the agreement gave the plaintiff a unilateral right to extend the closing date “for whatever time is required to complete such probates.” (Exhibit 1.) Thus I conclude that what the parties intended was that the seller, Bowman, would have a reasonable time to complete probate, and that the closing would occur at a reasonable time thereafter. The parties did not intend a firm deadline.
Even if one were to regard the 60-day closing as a firm deadline which defendant Bowman had a right to insist upon, he waived it by his inaction with regard to initiating probate. See McCarthy v. Tobin, 429 Mass. 84, 88-89 (1999). There can be no question that under the agreement it was Bowman’s obligation to complete the necessary probates to obtain clear title. He dropped the ball by doing virtually nothing.
I do not regard it as legally significant that the plaintiff did not explicitly extend the closing date as was his unilateral right. When Christopher Latham and Bowman spoke by telephone in February 2000, both treated the August 1999 agreement as still in effect. Christopher Latham stated that his client was ready to perform as soon as Bowman completed probate, and Bowman acknowledged that he was still bound by the August 18, 1999 agreement. In effect, even if one were to regard the August 18 agreement as having expired upon the passage of 60 days, the parties reaffirmed their obligations in a February 2000 telephone conversation. By then the 60-day closing date had passed. Still, Bowman was obligated to initiate and complete the necessary probates, and the parties were bound to close within a reasonable time thereafter. When Bowman signed the conflicting March 1, 2000 purchase and sale agreement with Lynch, he breached the August 18 agreement with plaintiff.
The question of the appropriate remedy presents a further issue. Defendants Bowman and Lynch contend that regardless of whether Bowman breached the August 18, 1999 agreement, Lynch cannot be made to give up title to the parcel because he entered into the March 1, 2000 agreement without notice of plaintiffs competing claim. As indicated, although I suspect that Lynch and his attorney had good reason to believe that the prior agreement was binding, the proof is insufficient for me to find that. Nevertheless, the fact that Lynch may have entered into the March 1, 2000 purchase and sale agreement without knowledge of plaintiffs rights does not make him a bona fide purchaser. In Massachusetts, when a buyer signs a purchase and sale agreement for the sale of land, he obtains an equitable right to compel the seller to convey title. He does not, however, acquire title. The seller “retains possession, rents, and profits and, reciprocally, bears the risk of ownership in case of loss.” McDonnell v. Quirk, 22 Mass.App.Ct. 126, 130 (1986). The rights of the buyer are contract rights rather than rights of ownership of real property. Laurin v. DeCarolis Construction Co., Inc., 372 Mass. 688, 691 (1977).
A buyer becomes a bona fide purchaser when he pays the purchase price and purchases the property, not before. “To qualify as a bona fide purchaser of land, one must actually have paid the purchase money before he or she received notice of a claim against the land.” Winberg v. Cimfel, 248 Neb. 71, 79 (1995); Westpark, Inc. v. Seaton Land Company, 225 Md. 433 (1960). “Only a purchaser of legal title to a property may claim bona fide purchaser status. One who buys a mere equitable title to land is not a bona fide purchaser, but takes only such title as the vendor has, and subject to all defenses good against the seller, even though the purchaser has no notice of them. Thus, although there is authority to the contrary, a person claiming an interest under an executory contract or option to purchase land normally is not entitled to the protections afforded a bona fide purchaser.” 92A C.J.S. Sec. 484 (2000). Furthermore, “[a] person may not invoke the doctrine of innocent or bona fide purchaser for value unless he or she establishes that the purchase money was actually paid before the purchaser received notice of outstanding encumbrances or equities, that he or she acquired legal title or the best right to it before notice, and that he or she purchased bona fide without notice. Although there is authority to the contrary, one who purchases equitable title to realty normally is not protected as a bona fide purchaser, where he or she receives notice of the prior equity either before acquiring legal title or before *65 paying all, or substantially all, of the purchase price.” 92A C.J.S. Sec. 485 (2000).
Here it is undisputed that plaintiff filed his lis pendens on Sept. 1, 2000 and defendant Lynch closed with defendant Bowman on Sept. 8,2000. Accordingly Lynch is bound by any order concerning the parcel which may be entered in this lawsuit.[1] Otherwise stated, the effect of the lis pendens was to restrict Bowman’s power to convey clear title to Lynch while litigation was pending. Debral Realty v. DiChiara, 383 Mass. 559 (1981). The lis pendens served to put Lynch on notice that plaintiff claimed a superior equitable right to compel conveyance of the property which prevented Lynch from becoming a bona fide purchaser. By purchasing the property notwithstanding plaintiffs claim, Lynch assumed the risk of a result favorable to plaintiff. See McCarthy vs. Tobin, 429 Mass. 84, 89-90 (1999). Lynch holds title subject to the equitable obligation to convey title to plaintiff upon payment of the purchase price agreed upon between plaintiff and Bowman. Greenfield Country Estates Tenants Assoc., Inc. v. Deep, 423 Mass. 81, 89 (1996).
ORDER
Judgment shall enter ordering Lynch, Trustee of the L.A.B. Realty Trust, to convey the parcel to plaintiff on payment of $3500.00.

 The fact that summary judgment was granted Lynch on the tortious interference count does not matter. Judgment had not entered. Lynch and Bowman are represented by the same counsel. Both testified at trial.