## No. 28,794.

C. E. Todd, *Appellee*, v. The Stewart Sand Company, *Appellant*.

(278 Pac. 712.)

Opinion filed July 6, 1929.

*Edwin S. McAnany, Maurice L. Alden, Thomas M. Van Cleave,* all of Kansas City, *James H. Harkless* and *Clifford Histed,* both of Kansas City, Mo., for the appellant.

*C. W. Trickett,* of Kansas City, for the appellee.

The opinion of the court was delivered by

Burch, J.: The action was one for damages for breach of covenants of a lease relating to maintenance and repair of the leased premises during the term, and condition of the premises at the end of the term. Plaintiff recovered, and defendant appeals.

E. J. Dietrich owned land which was suitable for use as a sand dump. To make the land available for such use Dietrich built a wooden trestle, on which the St. Louis-San Francisco Railroad Company laid a spur track. The track was constructed and was subse-

quently operated by the railroad company pursuant to a contract with Dietrich dated March 8, 1915. Dietrich built the trestle and entered into the contract with the railroad company for the purpose of leasing the land for use as a sand dump, and a lease to the Kansas City Sand Company dated March 8, 1915, was duly executed. The term extended to April 1, 1925. On November 7, 1917, the Kansas City Sand Company was absorbed by defendant, and the lease was formally assigned to defendant. The trestle was used for a sand dump by the Kansas City Sand Company until it was taken over by defendant, and was so used by defendant until some time after February 13, 1920. The trestle became unsafe for operation of the spur track because parts of the structure were beginning to rot. The railroad company suggested to defendant that the pieces be renewed. Defendant did not renew or repair. The railroad company then refused to operate the spur track, and later took up the track. At the end of the term the trestle was in a dilapidated condition. Defendant paid the rent stipulated in the lease from the time it entered until the end of the term. On February 27, 1920, Dietrich conveyed to Robert J. Brannon; in March, 1920, Brannon conveyed to plaintiff and another; in February, 1924, plaintiff's cotenant conveyed to plaintiff.

The action was commenced on May 27, 1925. The petition pleaded the lease. The lease contained three covenants relating to condition and repair of the trestle. One was that the lessee would keep the premises in good and sufficient repair. Another was that at the expiration of the term the lessee would yield up the premises in as good condition as when entered upon by the lessee, ordinary wear excepted. The third covenant requires development.

The lease referred to the agreement between the lessor and the railroad company, referred to the track of the railroad company, and required the lessee to pay switching charges. After these provisions came the following:

"And the second parties [lessee] . . . assume and agree to perform all things required of said first party [lessor] under the contract between said first party and said receivers [of the railroad company]. . . ."

The contract between the lessor and the railroad company contained the following provisions:

"The shipper [Dietrich, lessor] shall, before the construction of said spur track is begun, construct a wooden trestle to support the southerly one hundred and ninety-five (195) feet of said proposed spur track, so as to permit

the economical unloading of sand from cars to be placed upon said trestle by opening the dumps in the cars and permitting the sand to be discharged from the cars to points underneath the track upon the trestle. Said trestle shall be constructed of and in a good, sound and safe material and manner. . . .

"The shipper shall at all times renew and maintain said trestle in and of good, sound and safe material and manner."

When the lease was executed there was a small house on the land, which was in good repair, and which Dietrich used as an office. The house was standing when the lease expired, but was no longer habitable.

The result of the foregoing is, the lease must be read in this way: The lessee covenanted specially to renew and maintain the trestle of good, sound and safe material, and in a good, sound and safe manner. The lessee further covenanted to keep the premises generally in good and sufficient repair, and to surrender them in as good condition as when taken, ordinary wear excepted.

Defendant contends the provision in the contract with the railroad company relating to renewal and maintenance of the trestle was a personal covenant of the lessor, and was not binding on defendant. The provision concerned the land itself, and related directly to its beneficial use. The contract containing the provision recited that it should be binding on Dietrich's lessees, and Dietrich required his lessee to covenant that the lessee would renew and maintain the trestle according to the contract with the railroad company. Therefore, defendant became bound by that covenant precisely the same as it became bound by the covenants to repair and leave in good condition.

Defendant contends plaintiff did not sue on this covenant. Plaintiff did not plead this, that and the other covenant in his petition, but pleaded the lease, and thereby pleaded all the pertinent covenants contained in it. He further pleaded failure of defendant to repair and to keep the property in as good condition as when defendant entered; pleaded demand on defendant to repair and to place the property in the condition called for by the lease; and pleaded it would cost $7,500 to repair and to place the trestle in as good condition as when defendant received it, natural wear excepted. The petition made it plain, therefore, that plaintiff was asking for an amount which would compensate him for the loss sustained through defendant's failure to keep and deliver the trestle in proper condition.

Because the lessee received a new trestle safely built of sound ma-

terial, and surrendered a trestle on the verge of ruin, plaintiff was entitled to damages. To enable the court to make a fair estimate of damages, plaintiff proved first cost of the trestle, present cost of rebuilding it new, cost of putting it in condition to operate by using salvaged material, life of such a structure kept in repair, rate of deterioration, and other informative facts. Defendant objected to this evidence. It was properly received, not that any single item was conclusive, but for the purpose indicated by the court:

"I think it is competent. It is helping us to arrive at an equitable sum here."

The award of damages is not questioned, except as affected by method of proof.

There were some conflicts in the testimony. The court found generally for plaintiff, and the testimony favorable to plaintiff must be accepted here.

As indicated, the trestle was erected to be used, and was used, for a sand dump. Filling the structure with dumped carloads of wet sand, removing the sand, and repeating the operation over and over again, caused timbers to decay, and defendant's theory of the case was this: Defendant rested under no duty to replace pieces of the structure as they deteriorated and to maintain the structure itself in good condition. Defendant covenanted to repair. Plaintiff became owner on February 13, 1924, when his cotenant deeded to him. Right of action for damages accruing to the cotenants did not pass to plaintiff by the deed. When defendant became owner the trestle had been condemned and was in a nonreparable and worthless condition. Between the time defendant became owner and the time the lease expired nothing occurred to impair the usefulness of that which was already hopelessly decayed. Therefore, liability of defendant could not be predicated on the covenant to repair, and the covenant to surrender in good condition, ordinary wear excepted, was not available to plaintiff, because the trestle went to destruction through natural and ordinary wear.

Defendant's superintendent testified that if timbers in a trestle are replaced as they decay, the trestle will last indefinitely. Plaintiff, who qualified as a witness on the subject, testified as follows:

"A. If the trestle is kept in repair it would last indefinitely.

"Q. Explain what you mean by kept in repair. A. Well, when a certain timber becomes unsafe, or ties become rotten or rails become broken, they are

replaced. Just because there might be a weak spot in a certain tie or certain stringer would be no reason for letting the whole structure go to decay."

This experience of men in the business explains the special covenant imported into the lease relating to renewing and maintaining the trestle. It was contemplated there would be a trestle fit for use on the land at the end of the lease. Whenever defendant became owner, duty to him to renew and maintain arose. He could wait, however, until the end of the term to put the structure in proper condition for leaving; but plaintiff was entitled to receive at the end of the term a trestle so renewed and maintained by replacements and repairs that it would be in good operating condition, ordinary wear of a trestle so kept up excepted.

The judgment of the district court is affirmed.