JEREMIAH J. HARRINGTON *vs.* DORCHESTER FIELDS CORNER
STORAGE WAREHOUSE COMPANY.

Suffolk. December 9, 1936. — March 30, 1937.

Present: RUGG, C.J., PIERCE, FIELD, DONAHUE, & QUA, JJ.

*Negligence,* One owning or controlling real estate, Invited person. *Agency,* What constitutes. *Landlord and Tenant,* Liability of landlord to invitee of tenant.

There was no interest common to the owner of a cellar, a tenant thereof for the storage of potatoes, and an employee of a railroad corporation entering it with the tenant for the purpose of inspecting the potatoes to pass upon a claim of the tenant against that corporation, nor was the tenant an agent of the owner with authority to assure to the inspector a safe approach to the cellar, and the owner was under no duty to the tenant, and hence under none to the inspector, to warn of a dangerous structural condition of the approach to the cellar existing when the tenancy began and known to the tenant, or to improve that condition.

TORT. Writ in the Superior Court dated April 29, 1930.

The action was tried before *Bishop*, J., who ordered a verdict for the defendant. The plaintiff alleged an exception.

*W. R. Donovan*, for the plaintiff.

*A. S. Allen*, for the defendant.

PIERCE, J. This is an action of tort to recover for personal injuries sustained by the plaintiff by falling into an areaway upon premises in the control of the defendant. The answer of the defendant is a general denial, and the further answer "that the alleged injury was caused or contributed to by negligence or lack of due care on the part of the plaintiff and that the plaintiff voluntarily assumed the risk of injury."

The case was tried to a jury. At the close of the evidence and after the arguments were concluded the judge granted the defendant's motion for a directed verdict. The case is before this court on the plaintiff's exception to the direction to the jury to return a verdict for the defendant.

The evidence in its aspect most favorable to the plaintiff's right of action discloses, in substance, the following facts: A week or two prior to the accident, which occurred on December 16, 1929, after dark at about 5 P.M., one Sinnott contracted with one O'Hearn, the president of the defendant corporation, for the storage of a quantity of potatoes in the cellar of a building in which the defendant's warehouse was located, and where one Johnson was employed as custodian by the defendant. To get into this cellar one had to go to the rear of the building and then pass down a flight of stairs, which was located in the areaway in question. The areaway was covered over by a rectangular wooden enclosure. Entrance to this enclosure was gained through a doorway, in which were swung two doors that could be pushed inward from the outside. At the left in the areaway as one entered it from the outside, the flight of stairs led down from the ground level to the cellar. This flight of stairs did not run across the entire areaway from left to right. It ran only halfway across the entrance, and there were no stairs whatever in front of the right-hand part of the double door as one faced the en-

trance from the outside. The only entrance to the warehouse for the storage of goods was through the yard, and it was about twenty feet from the entrance to the cellar. The entrance to the cellar was so constructed that after the hasp was taken off one or both parts of the double door could be pushed open.

Prior to the agreement of storage between Sinnott and O'Hearn, they looked the cellar over. O'Hearn opened the door leading to the cellar, took off the lock and the hasp, and both doors swung ajar. He told Sinnott to be careful because the stairway ran only halfway across the opening, and they entered the building through the doorway where the accident happened. After Sinnott with O'Hearn had looked over the cellar and Sinnott had said that he would take it, they "went out the same door."

When the contract of storage was made Sinnott told O'Hearn that he wanted to store the potatoes in a safe place where he could sort them over and pick out the frozen ones; and that he would need some help to do this. There is no evidence in the record that Sinnott informed O'Hearn that he intended to bring anyone to the cellar except some one to assist in sorting the potatoes. O'Hearn agreed to this use of the cellar, and that Sinnott should have access to the cellar "to work on" the potatoes up to the time the custodian, Johnson, left, and at any time in the evening. About two weeks after the agreement was made, Sinnott told the custodian that he expected the inspector (the plaintiff) out to inspect the potatoes, and asked Johnson to "leave the place unlocked." There is evidence in the record to warrant a finding that the doors were always open, and evidence by the same witness that they were always locked.

The evidence warranted a finding that the plaintiff had been employed by the New York, New Haven and Hartford Railroad as an inspector of "perishable commodities"; that on December 16, 1929, which was about two weeks after the agreement of storage between Sinnott and O'Hearn, he was directed by his employer to call at Sinnott's house and was told that Sinnott would direct him to the defend-

ant's warehouse to inspect some potatoes. Harrington testified, without contradiction shown in the record, that he had never heard of these potatoes or of Sinnott before reporting for work that day; that he went to Sinnott's house and waited for him to arrive; that Sinnott arrived at about ten minutes of five, or later, and drove him to the warehouse; that it was probably after five o'clock when they got there, and it was dark; that when they arrived at the back entrance, they got out of the automobile and walked toward a sort of cellar with doors; that Sinnott fumbled around the lock, which apparently had been opened; that the doors were slightly ajar when they reached them, and Sinnott pushed them open; that Sinnott was on the witness's left; that he started down the stairs into the cellar; that when he was part way down the witness "started to follow and stepped into space"; that there was not any light or any sign of warning; and that there was no guard rail of any kind — just an open space at the door. He further testified: "I stepped off into space and I struck my shoulder against the wall and fell on my face with my elbow against the bottom of the wall"; "I left it entirely to Mr. Sinnott to show the way and take me where these potatoes were."

There is no evidence in the record to warrant a finding of any invitation extended directly by the defendant to the plaintiff.

It is the contention of the plaintiff that he was a stranger visiting the premises of the defendant for the first time when he received his injuries, and that he was then on business in which he and the defendant and Sinnott were all three beneficially interested. The plaintiff bases this position on the admitted fact that Sinnott had paid the defendant a consideration for the storage of the potatoes, and for the privilege of bringing others there in connection with the damaged condition of the potatoes; that the defendant's agent, Johnson, expected the plaintiff to come for the very purpose for which he did come, and made preparations for his coming, such as they were, at the time he came; that Sinnott himself was the defendant's agent

for the purpose of bringing the plaintiff there; and that Sinnott was the representative of the defendant, as well as acting in his own right, in bringing the plaintiff there. The plaintiff cites in support of his position *Wilcox* v. *Zane,* 167 Mass. 302, 306. *Statkunas* v. *L. Promboim & Son Inc.* 274 Mass. 515.

The defendant contends that the plaintiff entered upon the premises of the defendant in the right of Sinnott and not by any invitation, express or implied, of the defendant. *Gordon* v. *Cummings,* 152 Mass. 513. *Humphreys* v. *Portsmouth Trust & Guarantee Co.* 184 Mass. 422. *Pope* v. *Willow Garages Inc.* 274 Mass. 440, 443. *Denny* v. *Riverbank Court Hotel Co.* 282 Mass. 176, 178.

The undisputed facts in the instant case show that the condition of the stairs and areaway, so far as the physical construction was concerned, was the same when the contract was made between Sinnott and the defendant as at the time of the accident to the plaintiff; that when the contract was made the condition of the stairs in relation to the opening both could be and apparently was observed by Sinnott; and that the danger attendant upon the use of the stairs was obvious. The facts shown by the record further establish, as matter of law, that there was no agreement to improve the condition of the premises; that the only persons contemplated as likely to use the stairs or areaway in question, in connection with the storage of the potatoes, were Sinnott himself and the persons, if any, whom he might engage to assist him in sorting the potatoes; and that the plaintiff did not come within the class of contemplated users.

Whether Sinnott be regarded as a tenant, a bailee, or merely a licensee, it is plain the defendant was under no duty to him to change or improve the structural condition of the premises. And since no duty was owed to Sinnott in this respect, the defendant was not guilty of negligence because it made no change in the structural condition of the premises. On the uncontradicted facts it is clear that the plaintiff had no interest in the potatoes as such. He came to the defendant's premises, at the invitation of Sin-

nott, to examine the condition of the frozen potatoes and pass upon the claim of Sinnott against the railroad corporation. In these circumstances it is evident that the plaintiff came to the premises in the interest of the railroad corporation and of Sinnott; that his rights respecting the condition of the premises as between himself and the defendant were no greater than those Sinnott had against the defendant; and that the defendant, Sinnott and the plaintiff had no common interest in the stored potatoes based upon Sinnott's claim against the railroad corporation. On the undisputed facts it cannot be said that Sinnott was an agent of the defendant, clothed with an authority, express or implied, to assure the plaintiff that the way to the potatoes was safe or reasonably safe for use in the darkness of the night. The plaintiff had no greater rights against the defendant than his invitor, Sinnott, had. It follows, as matter of law, that the defendant owed the plaintiff no duty of warning, and was under no obligation to him to change or improve the structural condition of the premises. *Peirce* v. *Hunnewell*, 285 Mass. 287, 290, and cases cited.

The areaway did not constitute a concealed defect or trap. It was outside of the building, and, as an inspection of the photographs will show, when the doors were open one could see that the stairs did not extend way across the opening. The defendant pleaded "that the alleged injury was caused or contributed to by negligence or lack of due care on the part of the plaintiff, and that the plaintiff voluntarily assumed the risk of injury." It is not necessary to pass on the defences of assumption of risk and contributory negligence.

*Exceptions overruled.*