WILLIAM D. CORBETT *vs.* PHYLLIS CAPALDI SALUSTI & another.

Middlesex. May 6, 1953. — June 1, 1953.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & COUNIHAN, JJ.

*Landlord and Tenant*, Landlord's liability to tenant or one having his rights, Repairs, Lights, Construction of lease. *Law or Fact. Evidence*, Presumptions and burden of proof, Admissions and confessions. ·

In the absence of a direct invitation from a lessor to an employee of the lessee to come upon the leased premises, any rights of the employee as against the lessor were derived from the lessee and were no greater than the lessee's rights. [276]

The legal effect of a written lease was a matter of law concerning which the trial judge should have instructed the jury instead of leaving it to them to decide. [276]

Under a lease providing in a single sentence that the lessor should keep the leased premises in good repair and tenantable condition during the term "except in case of damage arising from the act or . . . negligence of the . . . [lessee's] agents or employees," one having no more than the lessee's rights as against the lessor and seeking to recover from the lessor for personal injuries sustained through an alleged defective condition of the premises must prove that that condition did not arise from such "act or . . . negligence." [276–277]

In an action for personal injuries sustained by a postal employee through falling into an open basement stairway in the yard of premises leased to the United States as a post office by the defendant, evidence not showing any cause for the demolishment of a guard rail formerly around the stairway, or for the breaking of a nearby light fixture, other than their being struck by mail trucks mostly operated by government employees did not sustain the burden resting on the plaintiff

in the circumstances of proving that such defective conditions were not due to "the act or . . . negligence of the government's agents or employees." [277]

A voluntary act of a lessor in placing safeguards on an open basement stairway in the yard of the leased premises after one had been injured by falling into the stairway did not constitute an admission by the lessor that he had a duty to the injured person to maintain safeguards on the stairway previous to the accident. [277–278]

TORT. Writ in the Superior Court dated April 13, 1949.

At the trial before *O'Connell*, J., a motion for a directed verdict by the defendants was denied, and there was a verdict for the plaintiff. The defendants alleged exceptions.

*Roger B. Coulter*, for the defendants.

*Robert J. Glennon*, (*John F. Corbett* with him,) for the plaintiff.

RONAN, J. The plaintiff, an employee of the United States postal department, fell into a stair well, which led from the rear yard into the basement of the post office building in Watertown, as he was leaving the premises at about five-thirty o'clock on the afternoon of December 28, 1948. The entire building was used and occupied by the government as a post office under a lease which was executed in 1943 for the term of ten years. The lessee also had the right to use a driveway which ran from the street, along the side of the building, and into the rear yard which extended about thirty feet from the rear wall of the building. The lessee also had the right to use this rear yard. At the farther end of the rear wall of the building were two doors separated by a narrow brick column, hereinafter called the freight door, which was used for the receipt and delivery of mail by trucks which had come in by the driveway and then backed up in the yard to reach this door. There was a canopy over this door in which there was an electric light. Between this door and the driveway and adjacent to the rear wall was an open stairway which led down to the basement. The stairway was separated from the yard by a concrete curbing seven or eight inches high which extended from the rear wall of the building and then turned and ran

parallel to the rear wall along the length of the stairway toward the driveway. There was attached to this curbing a guard railing consisting of two horizontal pipes connected with uprights of the same material.

There was considerable evidence of the use of the rear yard by trucks for the receipt or delivery of mail at the rear door. Between thirty and fifty trucks would come in each day and back up to the rear door. Some of these were operated by contract carriers who had contracts with the government to deliver mail but they were driven by post office employees except in the case of one mail messenger who was employed by the post office on a contract basis. In addition to these trucks there were five or six trucks owned by the government. Besides, other trucks owned by private concerns came in to deliver or take away their own mail. Some of the government trucks were small; others like the parcel post trucks had a capacity of three tons, carried eighty to one hundred sacks of mail, and stood quite high. Sometimes after these trucks had gone, it was noticed that the guard rail had been damaged, and such damage continued over a long period of time before the defendants became owners in September, 1948. Subsequent to 1945, the guard rail was constantly damaged by mail trucks; it was during the winter of 1947 "down completely" and at times it was tied up by the postmaster. Before the defendants became owners the guard rail grew more and more dilapidated; it "was flattened out"; it was damaged and repaired and then damaged again and this was a constantly recurring thing because "there is only 30 feet from the wall of the post office to the end of our land and it was difficult for those trucks to back in there and turn around." At the time the defendants had the driveway "black topped" in the late fall of 1948, the guard rail was detached from the curbing and was lying down against the building. It was placed in the rear of the premises during the black topping job and disappeared in a day or two thereafter. Nothing thereafter was done up to the time of the accident in guarding this open stairway.

The motion for a directed verdict should have been granted.

There was no evidence of any direct invitation from the defendants to the plaintiff to come upon the premises, and whatever rights he had as against the defendants he derived from his employer, the lessee. His rights rose no higher than those of the lessee. *Peirce* v. *Hunnewell,* 285 Mass. 287. *Harrington* v. *Dorchester Fields Corner Storage Warehouse Co.* 297 Mass. 85. *McCarthy* v. *Isenberg Bros. Inc.* 321 Mass. 170. *Levins* v. *Theopold,* 326 Mass. 511. The lease contained the following provision, "The lessor shall, unless herein specified to the contrary, maintain the said premises in good repair and tenantable condition during the continuance of this lease, except in case of damage arising from the act or the negligence of the government's agents or employees. For the purpose of so maintaining the premises, the lessor reserves the right at reasonable times to enter and inspect the premises and to make any necessary repairs to the building."

The interpretation of this written instrument presented a question of law, and the jury should have been instructed what rights and obligations it created, instead of being left to decide, as best they could, the legal consequences that followed from its execution. *Roberts* v. *Lynn Ice Co.* 187 Mass. 402. *O'Brien* v. *Boston & Maine Railroad,* 325 Mass. 451. *Willett* v. *Pilotte,* 329 Mass. 610.

The lessors did not undertake to keep the premises in good repair or free from a defective or dangerous condition arising from such want of repair by reason of damage resulting from "the act or the negligence of the government's agents or employees." The excepting clause exempting the lessors from liability occurs in the same sentence in which they assumed the keeping of the premises in good repair and in a tenantable condition. The whole sentence must be read together to determine the extent of the lessors' undertaking. The excepting clause eliminates from their undertaking what otherwise would be included. It has now become unnecessary to decide to which of the classes desig-

nated in *Fiorntino* v. *Mason*, 233 Mass. 451, the instant lease belongs. The plaintiff in order to recover was required to show that the cause of his injury did not arise from the act or negligence of the agents or servants of the lessee. *Commonwealth* v. *Hart*, 11 Cush. 130, 134. *Murray* v. *Continental Ins. Co.* 313 Mass. 557, 561. *Gorski* v. *New York Life Ins. Co.* 315 Mass. 17, 19–20.

The fact that the electric light fixture in the canopy over the freight door was broken and the light was not lighted at the time of the accident does not help the plaintiff. There was no evidence that the fixture had been broken except by high mail trucks backing up to the door. Besides, there was another light at the foot of the stairway which was under the control of the lessee and could be turned on, if it was desired to light up the stair well.

The evidence showed no cause for the frequent breaking down of the guard rail other than being damaged by mail trucks, a great majority of which were operated by employees of the government. The lessors were under no duty to repair the guard rail so damaged. There was no direct evidence that the removal of the dilapidated guard rail at the time the driveway was resurfaced was done by the lessors or anyone in their behalf. Even if we assume that it was, the guard rail prior thereto had been detached from its foundation and was lying down against the building. It had ceased to function as a barrier or guard and its removal did not add to the danger of the situation. If it had been left alone, in the condition and position it was in, it would not have prevented the accident.

There is no evidence that the defendants made any repairs to the guard rail prior to the accident. Subsequent to the accident they erected an iron grille to protect the stair well, and when that was demolished they put a wooden covering to protect the stair well. These were voluntary undertakings by the lessors, who as already pointed out were not required to repair the damage caused by the employees of the lessee or to make safe the premises defective because of such damage. *Kearines* v. *Cullen*, 183 Mass.

298.  *Ginsburg* v. *Jacobson*, 276 Mass. 108, 111.  *Hannon* v. *Schwartz*, 304 Mass. 468, 471.

*Exceptions sustained.*
*Judgment for the defendants.*