WILLIAM E. CORBETT & others, trustees, *vs.* DERMAN SHOE COMPANY.

Worcester.   September 22, 1958. — January 19, 1959.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Landlord and Tenant,* Covenant to repair.  *Practice, Civil,* Premature action; Order for judgment; Auditor: findings; Case stated; Appeal. *Evidence,* Presumptions and burden of proof.  *Damages,* For breach of contract, For failure to repair.

A general finding by a Superior Court judge on the report of an auditor whose findings of fact are final is in effect an order for judgment on a case stated from which an appeal to |this court lies under G. L. c. 231, § 96. [407]

Construing together a covenant in a lease commencing in 1940 whereby the lessors agreed that they would make repairs to the demised premises to an amount not exceeding $500 per year and the lessee agreed that it would "make all repairs in excess of said . . . $500 . . . necessary to keep the premises in such repair, order and condition as the

same are at the commencement of this lease, damage by fire and casualty excepted," and a covenant in the lease whereby the lessee agreed "to quit and deliver up the premises to the Lessors . . . at the end of the term, in as good order and condition, reasonable use and wearing thereof, fire and other unavoidable casualties excepted, as the same now are, or may be put into, by said Lessors," the undertaking of the lessee was to make at such times as prudent management should dictate during the term whatever repairs were necessary to maintain the 1940 condition of the premises, so far as the lessors' $500 per year did not do so, in order that the lessors should receive back their premises in substantially as good condition as in 1940, except for damage by fire or other casualty and except for the effect, notwithstanding the making of such repairs, of reasonable use, exposure to the elements, and aging. [409]

An action by a lessor for substantial breaches by the lessee of a covenant in the lease to make certain repairs of the demised premises during the term at such times as prudent management should dictate was not premature although commenced before the termination of the lease. [411]

In an action by a lessor for breach of a covenant by the lessee in the lease to make certain repairs of the demised premises during the term, the burden was on the lessee to show what part of disrepair apparent at the commencement of the action was due to "reasonable use and wearing" of the premises excepted from the lessee's duty by a separate and distinct provision in the lease. [412]

In the circumstances of an action commenced by a lessor during the term of the lease upon a covenant by the lessee to make certain repairs during the term, the proper measure of damages was the cost of making such repairs as of the time of commencement of the action where it appeared that the lessee had made no repairs during the remainder of the term after the commencement of the action and that the plaintiff would not be overcompensated by using such measure of damages. [414-415]

CONTRACT. Writ in the Superior Court dated May 26, 1950.

The action was heard by *Paquet*, J., on an auditor's report.

*Sumner W. Elton*, for the plaintiffs.

*Harry Bergson*, for the defendant.

WHITTEMORE, J. This is an action in contract for damages from an alleged breach of a covenant in a lease made in 1940. The covenant declared on is in the following provision: "The Lessors covenant that they will, at their own cost and expense, make repairs, both outside and inside the buildings, including the elevator and boilers to an amount in all not exceeding . . . $500 . . . per year and the Lessee covenants

that it will at its own cost and expense make all repairs in excess of said . . . $500 . . . necessary to keep the premises in such repair, order and condition as the same are at the commencement of this lease, damage by fire and casualty excepted." A count for waste was waived. The lease also contained another covenant by which the lessee was "to quit and deliver up the premises to the Lessors . . . at the end of the term, in as good order and condition, reasonable use and wearing thereof, fire and other unavoidable casualties excepted, as the same now are, or may be put into, by said Lessors; and not make or suffer any waste thereof . . . ." The action was brought in 1950. The lease terminated in 1953.

The case was referred to an auditor in January, 1954, findings of fact to be final. The judge in the Superior Court made a general finding for the defendant on the auditor's report and the plaintiffs duly appealed, and have argued their appeal here. We disregard the bill of exceptions also shown in the record. The finding was in effect an order for judgment on a case stated from which an appeal lies under G. L. c. 231, § 96. *National Cash Register Co.* v. *Warner,* 335 Mass. 736. *Merrimac Chem. Co.* v. *Moore,* 279 Mass. 147, 152.

The auditor found that "the lessors terminated the lease on June 9, 1953, on the ground that the lessee failed to carry on the shoe manufacturing business for a period of ninety (90) days." There was no finding of the stated term.[1]

The subsidiary findings of the auditor show that the premises were generally in sound condition in 1940 and that in 1950 "[t]he window sashes were loose, there was little putty in the casings," the spaces for putty "could be 'looked through,'" the outside paint "had faded and was weatherbeaten," the gutters and conductors "had in many instances been destroyed and some were hanging and some were in place." The boards in some floors were loose and "gouged,"

---

[1] The declaration alleges that the lease was from year to year until the lessee on or before any June first should give written notice of termination on the succeeding July first. The answer contains a general denial.

the flooring of the second floor was rutted, and the ruts in several places had been caused by the use by the lessee of defective racks. The cost of fixing the floors would have been $492.20. Except for this item "there was no evidence introduced to indicate what proportion of these repairs were caused by the elements and natural causes, and reasonable wear and tear, and what by the acts or negligence of the lessee."

Two of four statements by way of conclusion are these: "3. There was no evidence introduced as to the difference in value of the building in 1950, as against the value in 1940, by reason of the failure to make the repairs which the plaintiffs claim were required to be made by the lessee under the terms of the lease. 4. There was evidence introduced, subject to defendant's exception, as to the costs of repairs to the outside and inside of the building in 1950. Upon the basis of such evidence, the cost of making such repairs to put the premises in the condition as they were in 1940 (without reference to any reasonable wear and tear), I find, if made in 1950, would be . . . $9,400 . . . (over and above the . . . $500 . . . spent yearly by the lessors)."

The defendant contends that the exception of "reasonable use and wearing" in the redelivery clause also qualified the lessee's obligation to repair during the term to the same extent that would have existed had the repair covenant expressly excepted reasonable use and wearing as well as damage by fire and casualty. The plaintiffs concede that the exception in the redelivery covenant "may be construed in the case at bar to qualify also the defendant's obligation under the maintenance covenant" but they contend also, as we understand their brief, that the defendant may be excused from liability for the substantial change of condition from 1940 to 1950 only to the extent that it shows that this change would have resulted from use and wear notwithstanding the making, by the lessee, of the repairs stipulated in the repair clause as written. The plaintiffs say that the defendant has not met the burden of proof thus placed on it so that the plaintiffs are entitled to judgment based on the cost of

repairs in 1950. We construe the plaintiffs' brief, therefore, as not conceding that the repair covenant is qualified to the extent contended by the defendant.

The defendant further asks us to apply the rule of *Ball* v. *Wyeth*, 8 Allen, 275, 279, with the result that the redelivery covenant alone would be significant and the repair covenant would be held to impose no affirmative obligation on the lessee to repair during the term.

1. The provisions in respect of repair and redelivery are to be construed together to give force and effect to each in the light of the disclosed intent. *Ball* v. *Wyeth*, 8 Allen, 275, 279. *Judkins* v. *Charette*, 255 Mass. 76, 82. *Codman* v. *Hygrade Food Prod. Corp.* 295 Mass. 195, 199. *Crystal Concrete Corp.* v. *Braintree*, 309 Mass. 463, 468. *Ginsburg* v. *Jacobson*, 276 Mass. 108, 109–11. We rule that, so construing the covenants before us, the undertaking of the lessee was to make whatever repairs were necessary to maintain the 1940 condition of the premises, so far as the lessors' $500 per year did not serve to do so, at such times as a policy of prudent management would dictate, so that the lessors would receive back their building in substantially as good condition as in 1940, except for damage by fire or other casualty, and except for the effect, notwithstanding the making of such repairs, of reasonable use, exposure to the elements, and aging.

This lease is distinguishable from that construed in *Ball* v. *Wyeth*, 8 Allen, 275. Each covenant qualifies the other, and we think the more significant qualification which results from reading them together is that which is laid upon the redelivery covenant by the repair covenant.

In *Ball* v. *Wyeth*, there was no exception stated in the inserted covenant to keep in repair and maintain in good condition, and the printed redelivery covenant excepted reasonable use and wearing, fire and other unavoidable casualties. We noted that, if the exception did not modify the repair covenant, that covenant was extremely onerous, in that the lessee would have to rebuild in case of fire even though another provision required him to insure the build-

ing for the benefit of the lessor. We held (p. 279) that "the more just conclusion is that the exception was intended to qualify both of the covenants . . . and that the object of the written clause was to stipulate that the lessee should do his own repairs, and not call upon the lessor to keep the estate in tenantable condition. It will follow that the plaintiff can only recover for a failure to keep the property in repair, so far as it is caused by something else than ordinary wear and unavoidable casualties . . . ."

In this lease, by contrast, the lessee's obligation to repair is expressly qualified. The undertaking to repair, construed alone, is thus made reasonable as it was not in *Ball* v. *Wyeth*. The indication of an intention which the repair covenant states directly, and reasonably, that the lessee will take affirmative action to maintain the 1940 condition, is reinforced by the statement of a fixed annual amount to be spent first by the lessors. In view of that special provision, we must infer that the sentence of the lease which contains the repair covenant had the direct attention of the drafters of the instrument. We are unable to conclude that the intention of the sentence, or its legal effect, is only to provide that the lessee will not look to the lessors for repairs above $500 a year. The intention is plain, we think, that the lessors will have an assurance beyond that given by the redelivery covenant.

*Judkins* v. *Charette*, 255 Mass. 76, 82, may be taken to apply the rule of *Ball* v. *Wyeth, supra,* in respect of minor repairs which had accrued in the few months between the time of the lessee's last repairs and the end of the lease. We said (p. 82): "The covenant [to repair] did not impose upon the tenant the duty of keeping the premises in repair at all times during the term. It was complied with if they are left in that condition at the end thereof. *Hill* v. *Hayes,* 199 Mass. 411. *Cawley* v. *Jean,* 218 Mass. 263." But a reference to the record in the *Judkins* case shows that the separate covenant to repair read only "The lessee is to make the repairs," so that case is also distinguishable. In the *Hill* case, the disrepair existed at the beginning of the term.

The *Cawley* case did not involve a covenant to repair during the term.

For cases substantially in accord with the construction we adopt see *Gould* v. *Springer,* 206 N. Y. 641, 646; *Belgus Realty Corp.* v. *Irom,* 125 Misc. (N. Y.) 870, 871; *Manchester Amusement Co.* v. *Conn,* 80 N. H. 455, 459–460. And see *Todd* v. *Stewart Sand Co.* 128 Kans. 545; *Connell* v. *Brownstein-Louis Co.* 86 Cal. App. 610, 612, 614. A covenant requiring the tenant "so often as need should require, well and sufficiently to repair, uphold, sustain, paint, glaze, cleanse, scour, etc. a house and premises, with all needful reparations and cleansings, and to leave the premises in such repair, reasonable wear and tear excepted," would appear to be, expressly, the kind of undertaking which we think is to be found here by implication, and it was so construed in a charge to the jury in *Scales* v. *Lawrence,* 2 F. & F. 289, 291.[1]

2. The action was not brought prematurely. The covenant declared on was broken whenever during the term the defendant failed to make, within a reasonable time, such repairs as it was bound to make. The defendant's argument to the contrary depends in large part on the construction adopted in *Ball* v. *Wyeth, supra,* which makes the redelivery covenant alone significant. See *Judkins* v. *Charette,* 255 Mass. 76, 82. We must notice also, however, *Atkins* v. *Chilson,* 9 Met. 52, 63. That case is usually included with those cited to the well settled principle that an action does not lie under a redelivery covenant until the end of the term. See *Morad* v. *Ramos,* 330 Mass. 560, 562, and cases cited. But this use of *Atkins* v. *Chilson* is not to be taken to mean that the case holds that no right of action accrues for a breach of an undertaking to keep in repair when such breach occurs. In the *Atkins* case we said, "But if . . . the entry of the plaintiff had been for this cause [neglect to repair], yet we are strongly inclined to the opinion, that the plaintiff must fail in sustaining this breach as a cause of for-

---

[1] *Haskell* v. *Marlow,* [1928] 2 K. B. 45, held that a similar construction could be given to a single obligation to keep "in good repair and condition (reasonable wear and tear excepted)," but that holding was later ruled error on an appeal in another case, *Taylor* v. *Webb,* [1937] 2 K. B. 283.

feiture of the lease. The want of repair, in the matter of the conductor, would not, under the circumstances of the case, lead to that result. The neglect to replace it forthwith occasions no injury to the building, nor is in any manner prejudicial to the present right of the lessor. If put in the state in which it was at the time of making the lease, at any period during the term, it will be quite sufficient." The court expressly recognized that there was a breach, but held that it was not substantial enough to support forfeiture.

The findings of the auditor here show a substantial breach of the lessee's covenant. See section 3, *infra*. The right to recover for such a breach is recognized. See *Watriss* v. *First Natl. Bank*, 130 Mass. 343, 345, and cases cited; *Tilden* v. *Tilden*, 13 Gray, 103, 109; *Baker* v. *Horan*, 227 Mass. 415, 420–421; *Morad* v. *Ramos*, 330 Mass. 560, 562 (waste); Hall, Mass. Law of Landlord and Tenant (4th ed., Adams and Wadsworth) § 86; *Schieffelin* v. *Carpenter*, 15 Wend. 400, 409–410. As to specific performance see *Gulesian* v. *St. James Amusement Co.* 238 Mass. 172. In any event nominal damages are recoverable for breach of contract. *Nathan* v. *Tremont Storage Warehouse, Inc.* 328 Mass. 168, 171. *Landeau* v. *Marchbank*, [1949] 2 All E. R. 172. *Pennsylvania Cement Co.* v. *Bradley Contr. Co.* 11 F. 2d 687, 689 (2d Cir.).

3. The burden was on the lessee to show what part of the disrepair was due to excepted "reasonable use and wearing." *Murray* v. *Continental Ins. Co.* 313 Mass. 557, 563. *Corbett* v. *Salusti*, 330 Mass. 273, 276–277. The principle of the *Murray* case is succinctly restated in *Lubianez* v. *Metropolitan Life Ins. Co.* 323 Mass. 16, 18–19, in the following words: "The rule is well settled that, where a plaintiff seeks to enforce a right created by a general clause of a contract which also contains an exception, he must allege and prove that he is not within the exception; but where the exception is in another separate or distinct clause of the contract, then the burden of proof is on the party relying on such exception." In the *Corbett* case, *supra*, the principle was applied to a covenant in the lease in which the exception was in the sentence imposing the obligation, with the effect of

placing the burden of proof on the plaintiff who relied on the covenant. Here the action is on the repair covenant and the exception is in "another separate . . . [and] distinct clause" and the burden is on the defendant who relies on the exception.

Other courts have said that the burden is on the lessee or party relying on the exception of reasonable use and wear, or a similar exception, even where it is stated with the undertaking. *Haskell* v. *Marlow*, [1928] 2 K. B. 45, 50. *Taylor* v. *Webb*, [1937] 2 K. B. 283, 289, 307. *Rustad* v. *Lampert*, 149 Minn. 363, 364. *Taylor* v. *Campbell*, 123 App. Div. (N. Y.) 698, 699. *Geroy Realty Corp.* v. *Gortz*, 164 N. Y. S. 2d 153, 154. *McKinley* v. *C. Jutte & Co.* 230 Pa. 122, 124. *Vaughan* v. *Mayo Milling Co.* 127 Va. 148, 155. *Henry H. Cross Co.* v. *Rice*, 45 F. 2d 940, 943, cert. den. 283 U. S. 865. *Pocono Pines Assembly Hotels Co.* v. *United States*, 69 Ct. Cl. 91, 101–102. Compare *Corbett* v. *Salusti*, *supra*. We need not pause to consider whether if, as in *Ball* v. *Wyeth*, *supra*, the redelivery covenant, containing the exception, were construed to be the controlling one, the burden of proof should be on the lessor.

Here, as we construe the covenants, the exception of use and wear is limited in its application, and the inference is reasonable, if not necessary, that at least the greater part of the disrepair as found by the auditor is not excused to the lessee. Compare, for cases where the use and wear exception expressly qualified the repair covenant, *Kaplan* v. *Flynn*, 255 Mass. 127; *Massachusetts Home Missionary Soc.* v. *Sirianni*, 252 Mass. 352. While it is a reasonable inference that some part of the damage was due to excusable use and wearing, this inference does not help the defendant because of the incidence of the burden of proof. The findings do not establish that the figure of $9,400 includes any items for which the lessee is not liable, and as this cost of repair is a proper measure of damages (see point 4, next following), no more precise findings are required to permit the entry of judgment for the plaintiffs on this case stated. See *Wasserman* v. *Roach*, 336 Mass. 564, 567.

4. In this action the cost of repairs in 1950 was a proper measure of the plaintiffs' damages.

The reasonable cost of repairs is the measure of damages where the action is brought after the end of the term. *Crystal Concrete Corp.* v. *Braintree,* 309 Mass. 463, 470, and cases cited. It is true that the application of this rule to cases where the lessor has no present estate, but only a reversion, may overcompensate him and leave the lessee without the benefit of repairs he has paid for. In *Pennsylvania Cement Co.* v. *Bradley Contr. Co.* 11 F. 2d 687, 688 (2d Cir.), L. Hand, J., said, ". . . [I]f the lease has not ended, the present cost . . . would give . . . [the lessor] the equivalent of the improvements in a condition in which he would not be entitled to them. He would get them only after they had been aged by the duration of the lease, and at best he must prove that they would not be of less value then than now." Consistently with these considerations, we have heretofore recognized the rule that, pending the term, the lessor may recover the diminution in the market value of his estate. *Watriss* v. *First Natl. Bank,* 130 Mass. 343, 345. See *Hanson* v. *Newman,* [1934] Ch. 298, 307; *Appleton* v. *Marx,* 191 N. Y. 81, 83–84. Compare *Buck* v. *Pike,* 27 Vt. 529, 532; 23 Harv. L. Rev. 67. But we discern here no circumstance making it unjust to allow the cost of repairs as of the time during the term when the action was brought. The auditor stated, "The only evidence was as to the condition in 1940, in 1950 and in 1953, after the return of the writ and the time of the termination of the lease. The view that was taken was not until 1954 . . . ." Although there is no express finding that the lessee had not between 1950 and 1953 acted to overcome the disrepair which existed in 1950, the inference is strong that such was the fact.[1] Any intervening repairs would have mitigated the damages, pro tanto, however computed. We

---

[1] An affidavit filed on behalf of the lessors requesting a continuance pending our consideration of a case brought under the redelivery covenant after the end of the term states that the auditor in that action "found that the defendant had made no repairs . . . at any time during the entire thirteen years of its occupancy under the lease." A counter affidavit was not addressed to the statement and does not controvert it.

think that if the evidence of condition in 1953, or the view, had shown intervening action by the lessors the auditor would have so stated. From all the relevant findings we infer that there was no such action. It follows that the lessors will not be overpaid by the receipt now of the 1950 cost of the repairs which the lessee was bound to make. The inference is required that the state of disrepair would be greater in 1953 than in 1950. The obligation to repair continued throughout that period and the lessors will, on payment of a judgment after 1953, receive no more than they were entitled to at the end of the lease in 1953. Having in mind the difficulty and uncertainties involved in establishing the lessened value of property, including the great divergence between opinions of value given in cases where it is necessary to resort to such evidence, we see no reason to reject the cost of repair as evidence of damages where, as here, it is reasonably apparent that the lessors will not be overpaid. The term having ended and no repairs having been made by the lessee under its continuing obligation, the lessors, so far as a rule for measuring damages is concerned, are in substantially the position of a lessor who has brought his action after the term has ended. See *Bowen* v. *Jones*, 234 Mass. 90, 92–93; *Dalton* v. *Demos Bros. Gen. Contractors, Inc.* 334 Mass. 377, 379. And see *Hopkins* v. *American Pneumatic Serv. Co.* 194 Mass. 582, 583–584. For a case where the cost of repairs would have overcompensated the plaintiff see *Pennsylvania Cement Co.* v. *Bradley Contr. Co.* 11 F. 2d 687, 688. (2d Cir.).

5. It was stated at the argument and shown in the plaintiff's motion to continue this case that there is another action pending, brought under the redelivery covenant, which was begun after the lease ended, and in which there is a finding for the plaintiffs in a substantially larger amount than in this case. The defendant, by counsel, stated in open court, in support of its contention that judgment should be for the defendant in this action, that the possible defence of res judicata is not raised. We do not construe that statement to bar the defendant from asserting a right to have all or a

part of the recovery herein credited against a judgment in the second action. Such right, however, and the extent thereof, cannot be determined in this case.

> *Order for judgment reversed.*
> *Exceptions dismissed.*
> *Judgment is to enter in Superior Court for the plaintiffs on the auditor's report.*