JOSEPH W. GUARENTE *vs.* WALDORF SYSTEM, INC.

Suffolk. May 2, 1960. — June 10, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Landlord and Tenant,* Covenant for redelivery.

A provision of a lease of premises prepared by the lessor's attorney, immediately following a paragraph stating the lessor's right of entry and termination for condition broken, that "no default of the lessee in any of the . . . covenants or agreements hereof . . . [should] be deemed to have occurred or constitute a basis of forfeiture of this lease unless the default" should have continued for a certain time after written notice thereof from the lessor and the lessee should have "failed to correct the same" within that time, was inapplicable to a covenant by the lessee to yield the premises to the lessor "at the expiration of this lease . . . in reasonably clean and tenantable condition." [208–209]

Provisions in a lease of a business building, that the lessee should not be obliged to make repairs "the need of which arises . . . from causes originating outside of the demised premises" and that the lessor should make exterior repairs and maintain the exterior in "neat, sound and safe condition," did not relieve the lessee from an obligation, under a covenant to yield the premises to the lessor "at the expiration of this lease . . . in reasonably clean and tenantable condition," to remove at the end of the term accumulated soot, dust and dirt which became apparent on the exterior of the building when the lessee then removed therefrom metal letters spelling its name. [210–211]

A covenant by the lessee in a lease of business premises to yield the premises at the termination of the lease "in reasonably clean and tenantable condition" was not broken by reason of the presence of holes in the tile on an exterior wall of the building at the expiration of the lease where it appeared that the holes had been made pursuant to the specifications in

the construction of the building before the commencement of the lease and the lessee's occupancy, even though the holes had been made for lag screws and electrical conduits in connection with a sign of metal letters spelling the lessee's name which was removed by the lessee at the expiration of the lease. [211]

The facts, that when a lessee of business premises, upon termination of its lease, removed metal letters spelling its name from tile on an exterior wall of the building an imprint of the name was left on the tile by reason of accumulated soot, dust and dirt, and that it might not be feasible to remove the imprint from the tile, did not show a breach of a covenant by the lessee to yield the premises "in reasonably . . . tenantable condition." [211]

CONTRACT. Writ in the Superior Court dated December 5, 1956.

The action was tried before Murray, J.

*William B. Sleigh, Jr.,* for the defendant.

*Lawrence H. Adler,* for the plaintiff.

WHITTEMORE, J. The plaintiff had a verdict in this action for damages for breach of the lessee's covenants in a lease of premises in Charlestown for use as a restaurant and lunch room for one year beginning June 1, 1955. The case was submitted to the jury solely on the issue of a breach of the covenant to redeliver the premises in reasonably clean and tenantable condition.[1]

1. The defendant's motion for a directed verdict was properly denied. The defendant stands on the provision in the lease[2] which states that no default "shall be deemed to have occurred or constitute a basis of forfeiture of this lease" unless it has continued for a stated time after notice.

---

[1] ". . . at the expiration of this lease the Lessee shall peaceably yield up to the Lessor the premises and all erections and additions, except trade fixtures and equipment, made to or upon the same in reasonably clean and tenantable condition, damage by fire, reasonable wear and tear, unavoidable casualty, vis major, acts of war, riot or public disorder excepted."

[2] "The Lessee shall not be deemed to have made any material default in its covenant for payment of rent to constitute a basis of forfeiture of this lease unless the default shall continue for more than ten days after written notice has been given by the Lessor to the Lessee specifying with reasonable detail of what the default consists and the Lessee shall have failed to correct the same within said ten days; and no default of the Lessee in any of the other covenants or agreements hereof shall be deemed to have occurred or constitute a basis of forfeiture of this lease unless the default shall continue for more than thirty days after written notice . . . specifying with reasonable detail of what the default consists and the Lessee shall have failed to correct the same within said thirty days or such further time as is essential or necessary to correct the same."

This provision was inapplicable to the redelivery clause. *Harflet* v. *Butcher,* Cro. Jac. 644. It speaks in respect of the period in which the lessee has an estate in the premises under the lease. To make it applicable to the undertaking which can be broken only as the lease ends would require implying a right in the lessee to enter after the term and an obligation in the lessor to restrict his dominion accordingly. This implication is not reasonably to be found in the lease. See *Jebeles & Colias Confectionery Co.* v. *O'Byrne,* 7 Ala. App. 213, 218. Compare *Reed* v. *Harrison,* 196 Pa. 337, 340. The opportunity of making good a default physically rather than by paying the legal equivalent to the lessor is of significance, primarily in any case, only during the term when it is the means of avoiding forfeiture of the lessee's estate. The requirement of notice is in a paragraph which immediately follows the paragraph in which is stated the lessor's right of entry and termination for condition broken, that is, the provision for forfeiture. The comprehensiveness of the language (". . . no default . . . in any of the other covenants or agreements") and the effect of the circumstance that the lease was prepared in the office of the plaintiff's attorney must give way to the intent shown by the nature of the undertaking for redelivery of the premises, the express provision for termination of the lease and the context. Compare *Corbett* v. *Derman Shoe Co.* 338 Mass. 405, 409.

2. There was evidence that the building had been erected "some years before, pursuant to a contract between the owner and a contractor, and certain holes in the tile on the exterior wall of the building" were made by the contractor pursuant to the contract specifications; "certain of the specifications and plans . . . were furnished to the owner" by the lessee (Waldorf); the holes in the tile were designed for lag screws and for electrical conduits to provide for a sign consisting of metal letters spelling the name "Waldorf"; when the letters were removed by the defendant on May 31, 1956, the holes remained visible and soot, dust and dirt, which had accumulated over the years, outlined the

word "Waldorf" on the tile surface.   There was testimony
also that "to eliminate the holes and the smoke and soot
marks it would be necessary to replace tiles . . .; . . . the
smoke and soot marks could be washed off with an acid
but . . . it would not be guaranteed that it would not
change the color of the tile; . . . the solution of acid would
change the color where the letters had been superimposed
so that they would not present a uniform appearance."

The defendant excepted to the judge's refusal to give cer-
tain instructions, including: "14.   If the holes in the tile
front on the outside of the building were included in the
contract specifications for the construction of the building
by the plaintiff prior to any occupancy of the premises by
the defendant, the defendant was under no obligation to do
anything about the holes when it vacated the premises";
"19.   The lease placed no obligation upon the defendant
with respect to any repairs to the exterior of the building
and the plaintiff is not entitled to recover the cost of clean-
ing or restoring the exterior or repairing holes therein."

The defendant also excepted to a part of the judge's
charge, as follows: "In determining whether . . . the
premises were left . . . in a reasonably clean and tenant-
able condition, while there is no obligation upon the tenant
to make any repairs to the exterior . . ., yet you may take
into consideration the effect upon the condition of the . . .
exterior . . ., if any in your judgment, . . . of the removal
of the signs . . ..   [S]o long as the defendant had any
control over the exterior . . . if by its acts or omissions on
May 31, 1956, with respect to the exterior, the premises
were left in a state of repair which rendered them not
reasonably clean or tenantable, as I have charged you [re-
ferring to an earlier part of the charge], and so long as the
same constituted something more than reasonable use, wear
and tear, then you may take that into consideration . . .."

Request 19 was properly refused because unsoundly
based.   It was immaterial that the lessee was under no
obligation in respect of the making of exterior repairs.
The defendant's contention is that as the lease exonerated

the lessee from responsibility for repairs "the need of which arises . . . from causes originating outside of the demised premises," and the lessor had the duty to make exterior repairs and maintain the exterior in "neat, sound and safe condition," no obligation to clean or restore the exterior at the end of the term was imposed on the lessee. We disagree. The lessee's act in removing the letters left the store front in a condition which could have been found not to be "clean" within the meaning of the lease. The lease imposed on the lessee an obligation to clean the premises after removing fixtures therefrom and this obligation was not lessened by the provision requiring that the lessor keep the exterior neat during the term.

We think, however, that the substance of request 14 should have been covered in the charge and the charge given modified accordingly. It was the inescapable inference from the evidence that the holes were in the tiles when the lease began in 1955, and the conclusion was warranted that they were in the tiles before the lessee first occupied, presumably, under an earlier lease. The lease of course could have required that the lessee at the end of the term make the asserted partial reconstruction of the premises, but we think the obligation to do so is not implied in the undertaking to "yield up . . . the premises . . . in reasonably clean and tenantable condition." Doubtless the holes were only useful to Waldorf. This suggests that a provision in the lease which would have imposed an obligation upon the lessee to replace tiles on termination would have been reasonable, but nothing in the lease imposes such an obligation, expressly or by implication. See *Perry* v. *J. L. Mott Iron Works Co.* 207 Mass. 501, 504–505. The holes did not make the premises reasonably untenantable.

We rule also that the possibility that the imprint "Waldorf" was only temporarily removable by cleaning did not make the premises reasonably untenantable.

3. Our ruling in point 1 makes it unnecessary to discuss the defendant's other exceptions.

*Exceptions sustained.*