230 N.J. Super. 189 (1989)
553 A.2d 59
CHARLES M. WINROW AND ROSEMARIE WINROW, HIS WIFE, AND RICHARD METS AND MARYANN METS, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
MARRIOTT CORPORATION, DEFENDANT-THIRD PARTY PLAINTIFF-RESPONDENT,
v.
HORN'S, INC. AND MARTIN L. HORN, JR., INDIVIDUALLY, THIRD-PARTY DEFENDANTS-RESPONDENTS, AND E & R SURPLUS SALES, INC. AND MIDLAND INSURANCE COMPANY, THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 14, 1988.
Decided February 3, 1989.
*190 Before Judges GAULKIN, R.S. COHEN and ARNOLD M. STEIN.
Marc J. Friedman argued the cause for appellants (Howard C. Trueger, attorney).
Robert B. Kroner argued the cause for respondent Marriott Corporation.
No appearance on behalf of respondents Horns, Inc. and Martin L. Horn, Jr.
The opinion of the court was delivered by GAULKIN, P.J.A.D.
Plaintiffs (Winrow), owners of a commercial building leased to defendant Marriott Corporation (Marriott), sued Marriott for its breach of lease covenants requiring it to maintain the *191 premises in good repair. On Marriott's motion at the conclusion of Winrow's proofs, the trial judge found that Winrow had made out a cause of action, but ruled that Winrow's evidence as to the costs of repair was "not relevant" because "the applicable measure of damages is injury to the reversion." Since Winrow had offered no proof as to such injury, the judge dismissed the claim. Winrow appeals.

I.
Winrow leased the building to Marriott on April 10, 1975 for a 20 year term. The lease, which contemplated operation of a fast-food restaurant, required Marriott to maintain the building "in good condition and repair" and to deliver it at the end of the lease term "in good order and condition except for reasonable wear and tear...."
Sometime in late 1983 or early 1984, Marriott sublet the premises, as authorized by the lease, to Horn's, Inc., which operated a restaurant until about September 1984. Upon seeing the building vacant and boarded up, Winrow addressed a number of letters to Marriott between September and December 1984, asserting violations of the lease covenants, including the covenant to maintain and repair. On December 13, 1984, Winrow filed this action for damages, alleging among other matters that Marriott was "permitting the deterioration of the inside of [the] building."
While the suit was pending, Winrow brought a separate action to dispossess Marriott because of its alleged breaches of the lease. Judgment for possession was granted.[1] Marriott was removed from the premises and Winrow relet the building to a new tenant as of October 1, 1985.
*192 This matter went to trial more than two years later, in October 1987. Winrow presented proofs that when the new tenant was given access to the building, there was "quite a bit of destruction," including damage to the brickface, asphalt, roofing, interior counters, ceiling, chandeliers, pipes, sinks, toilets, sprinklers, ventilation hoods, electric wiring and heating, ventilating and air conditioning systems. Winrow also presented testimony as to the cost of repairs, but no evidence from which a factfinder could determine a reduced value of Winrow's reversionary interest resulting from Marriott's failure to repair and maintain. Winrow's claim was dismissed because of that purported flaw in the damage proofs.

II.
Finding "no clear exposition" of law in New Jersey, the trial judge relied on what he found to be the "general rule" adopted in other jurisdictions that, where an action for breach of a covenant to repair is brought during the term of the lease, the measure of damages is the injury to the lessor's reversion. If the action is brought after the expiration of the lease, the authorities agree, the measure of damages is the cost of repair. See generally Annotation, "Measure and items of damage for lessee's breach of covenant as to repairs," 80 A.L.R.2d 983 (1961); see also S.D.G. v. Inventory Control Co., 178 N.J. Super. 411 (App.Div. 1981).
The rationale for that rule has been variously stated. In Corbett v. Derman Shoe Co., 338 Mass. 405, 155 N.E.2d 423 (1959), the court said that to award the cost of repairs to a lessor who has only a reversionary interest "may overcompensate him and leave the lessee without the benefit of repairs he has paid for." Id. at 414, 155 N.E.2d at 428. In Pennsylvania Cement Co. v. Bradley Contracting Co., 11 F.2d 687 (2d Cir.1926), Judge Learned Hand offered a somewhat different explanation:

*193 if the lease has not ended, the present cost ... would give [the lessor] the equivalent of the improvements in a condition in which he would not be entitled to them. He would get them only after they had been aged by the duration of the lease, and at best he must prove that they would not be of less value then than now.
Id. at 688.
The rule has also been justified on grounds that the lessor is not obligated to make the repairs and in any event cannot do so without the lessee's permission to enter the premises (Gold Mining & Water Co. v. Swinerton, 23 Cal.2d 19, 142 P.2d 22, 32 (1943)); that the lessee could find it necessary to make the same repairs for which he has already paid the lessor (National Bank of Detroit v. Voigt's Estate, 357 Mich. 647, 99 N.W.2d 504, 507 (1959)); and that the lessor's entitlement to damages during the lease term is entirely speculative since the lessee may make the necessary repairs before the lease expires. Id. at 651, 99 N.W.2d at 507.
Thus the general rule barring recovery of repair costs in an action brought during the lease term reflects a concern that the loss sustained by the lessor is uncertain so long as the lessee remains in possession. Awarding the lessor damages only for the diminution in value of his reversion presumably represents an attempt to express those uncertainties in a present value. But that is itself a difficult and unsatisfactory effort. As the court said in Corbett, any attempt to prove diminished value of the lessor's reversion is fraught with "difficulty and uncertainties ... including the great divergence between opinions of value given in cases where it is necessary to resort to such evidence." 338 Mass. at 415, 155 N.E.2d at 429. Corbett thus departed from the general rule, holding that there is
no reason to reject the cost of repair as evidence of damages where, as here, it is reasonably apparent that the lessors will not be overpaid.
Id.
This case does not require us to determine whether or in what circumstances repair costs might properly be awarded *194 against a lessee in possession. Here, although Winrow brought the action while Marriott was still in possession, the court was called upon to fix damages after Marriott had been ousted, the lease had long been terminated and the consequences of Marriott's breach had become fixed. Since there was no longer any uncertainty as to the nature and extent of the failure of repair, there was no justification for rejecting the cost of repairs as a measure of damages. As the court said in Corbett:
The term having ended and no repairs having been made by the lessee under its continuing obligation, the lessors, so far as a rule for measuring damages is concerned, are in substantially the position of a lessor who has brought his action after the term has ended.
338 Mass. at 415, 155 N.E.2d at 429 (citations omitted).

III.
We therefore reverse the judgment insofar as it dismisses Winrow's claim for breach of the covenant to repair. We also reverse the judgment insofar as it dismisses without prejudice Marriott's counterclaim and third-party complaint for indemnification: the judgment specifically reserved to Marriott the right to reinstate those claims upon reversal of its judgment against Winrow. All of those matters are remanded to the Law Division for new trial.
Substantially for the reasons expressed by the trial judge in his December 7, 1987 oral opinion, we affirm the judgment insofar as it dismisses Winrow's remaining claims, including those for negligence and lost profits.
Judgment affirmed in part, reversed and remanded in part.
NOTES
[1] The record before us does not disclose the specific allegations or findings of the court in the dispossess action.